# Larimer *against* M'Call.

After an entire tract of land has been assessed as a seated tract, and returned by the competent authority to the commissioners as the triennial assessment, it is not lawful for the assessor and supervisor subsequently upon the representation of a person in possession claiming part of the land to change the assessment and give part of the land the character of an unseated tract without notice to the owner; and a sale made upon such assessment is void.

ERROR to the Common Pleas of *Butler* county.

Archibald M'Call against Alexander Larimer.   This was an action of ejectment for a tract of land containing 209 acres.   This case has been twice before reported, and the facts of it are again so clearly stated in the opinion of the court as to render any other

[Larimer v. M'Call.]

unnecessary.   The cause was argued by *Sullivan,* for the plaintiff in error, and *Gilmore,* for defendant in error.

The opinion of the Court was delivered by

Rogers, J.—This cause has already been twice before this court. It is first reported in 4 *Watts* 351, and again, in 2 *Watts & Serg.* 107. In the latter case, the writ of error was taken by M'Call, and was reversed in part, because, as this was a seated tract, the defendant was not entitled to the value of his improvements.   This writ of error is now taken by the defendant, who alleges various errors in the court below.   In consequence of the great zeal of the counsel, I have looked into the case with some attention, but without being able to discover any substantial variance between it and the same case as reported in 4 *Watts,* and again in 2 *Watts & Serg.* The defendant, Larimer, settled on a tract of land containing 439 acres, under a contract with Nicholas Day, by which Larimer was to have 200 acres for making the settlement.   Larimer obtained a patent for the whole tract, and afterwards conveyed 239 acres to Archibald M'Call, the plaintiff.   Larimer sold his 200 acres to Edward Duffy.   The whole tract, consisting of 439 acres, was assessed to John Larimer as a seated tract, as appears on the duplicate of assessment.   The duplicate assessment was put in the hands of the assessor, and on every paper it appears to have been assessed as a seated tract belonging to Larimer of 439 acres.   Notwithstanding this, the defendant alleges it was an unseated tract for the 239 acres allotted to M'Call, and that as such it was sold for the arrearages of a road tax for the year 1815; and for the purpose of proving this, he offers in evidence the commissioner's unseated land book for the year 1815, to show that the commissioners assessed a county and road tax on part of John Larimer's tract; and also to show, by the same book, that a tax was due in 1816, although not receipted on the deed by the treasurer.   The defendant then proved that John M'Culloch was the supervisor of Donegal township in the years 1815 and 1816; that he received a copy of the assessment from the assessor; and that the part of John Larimer was assessed separately for the road taxes for those years.

The defendant then proved by John M'Culloch, who was the supervisor, and Moses Hamlin, the assessor, that they assessed the unseated part for the road tax of 1815.   M'Culloch says he went to the Larimer place, that Duffy was there.   He said Larimer had sold the place to him, and that he would pay for 200 acres; that he did not buy more, and that he would not pay for more; that he would not pay for the horses and cows; that Duffy paid him for the 200 acres.   We assessed the tract, (meaning I suppose the tract in dispute), as unseated, and made the assessment as unseated. He (M'Culloch) made the assessment from the copy given by the assessor, Moses Hamlin; he made a return, but does not recollect

[Larimer v. M'Call.]

what was done. Hamlin, the assessor, swears, " that Larimer told him that he would only pay for the north end of the tract. He lived on it, (that is, the seated part), and authorized me to scratch it out of the duplicate. He authorized me to put it down in my duplicate, not the one I returned; it was the one I kept." He says he did make an assessment; that he was on the ground, and found it was unseated. Defendant also gave in evidence the return of lost taxes for 1815. John Larimer, 1815.

The amount of testimony is, that the assessor and supervisor had in their hands the duplicate of the assessment made by the commissioners, in which the property is assessed as seated, and as an entire tract of 439 acres; and they on the representations of the person in possession, who was charged with the taxes, undertook to change the entire assessment, by which 200 acres became assessed as a seated, and the remainder as an unseated, tract. And if the township assessor and the supervisor have this power, then the title of the defendant is good; otherwise, it is defective and void. It must be recollected that it was assessed as an entire seated tract by the only competent authority, viz. by the commissioners, after it had been valued, as is directed in the Act, by the township assessors. Now what is the authority assumed for the assessor and supervisor but to make an entire new assessment, at the instance of one of the parties only, to divide an entire tract into two parts, one seated and the other unseated, and of course to put a new valuation on each, they being different in quality and in value. If they have that power, it must be by virtue of the Act, but I have not been able to find it. The only power I have been able to find, is to levy a tax on property overlooked by, or concealed from the assessor. But this cannot be pretended here. There was no mistake; on the contrary, it seems to me that the property, under the circumstances, was properly assessed by the assessor as a seated tract. There has been no change of persons or property, which called for the interference of the assessor, or a return by him, as is provided in the 9th section. And it could not be otherwise done until the proper representations were made to him previous to the assessment, that the parties wished it to be separately assessed. M'Call had a right to consider it as assessed as a seated tract; that there was a personal liability for the tax, and as such to rely upon the fact that his land was exempt, but that his liability was a personal one to Larimer for his part of the tax when paid. This case shows the mischief that may be done by any other mode of considering the matter. Duffy, it appears, makes private representations to the assessor and supervisor, without the knowledge of M'Call. They undertook to make the change, by which it is altered from a seated to an unseated tract. The taxes are of course unpaid, the land is sold for the unpaid tax, Duffy becomes the purchaser at the treasurer's sale, and afterwards transfers it to Larimer. I will not

[Larimer v. M'Call.]

say it was a contrivance to get hold of M'Call's property, but it looks something like it; and it is very certain that if such a practice were encouraged, it would lead to fraud. But what was the duty of the supervisor? Can it be doubted that it was his duty to collect the tax according to his duplicate, and to leave Duffy, or Larimer, to his remedy over against M'Call? Its character as a seated tract had been determined, the personal liability of Larimer had been fixed by the only competent authority, and this they, who were subordinate officers, had no right to change or control. The evidence proves that the assessor made the change in his own duplicate, but it does not appear that it was ever submitted to the commissioners, or that they in any way sanctioned the conduct of the assessor and supervisor. For admitting that it appeared on the unseated land book, yet this which is mere secondary proof, and is kept only for the convenience of the commissioners, cannot have the effect of an adjudication. If Larimer or Duffy wished to be released from the payment of the tax assessed on the unseated part, they should have objected to it before the assessment: or perhaps afterwards the commissioners would have relieved them; but this they would not have undertaken to do without notice to M'Call, who, from the fact that it had been already assessed as a seated tract at a triennial assessment, had a right to suppose it would continue so until he had notice that it was determined otherwise. It is the assessment which confers the power to sell, in the same manner as a judgment on which an execution is issued. It will not admit of argument, that if assessed as a seated tract there can be no authority to sell, although a part of the tract may be unseated. So that even admitting that the assessor made returns to the commissioners, before the character of the tract could be changed, it would require an express adjudication by competent authority after notice. The circumstance that the collector was exonerated from the tax of 1815, has been again pressed; but that argument was met and answered, when this case was at a former time before this court.

The 20th and 21st sections of the Act of the 12th of April 1842, have been presented to the attention of the court. But they have no bearing on this case in law, because the Act was passed after judgment was rendered; and our respect for the legislature forbids us to believe that they ever intended it should apply to such a case. It applies to future cases; and what effect it may have if the defendants should renew the suit, as they may, it would be premature to decide.

Judgment affirmed.