2g 367
164 364

MIDDLE DISTRICT, HARRISBURG, 1858.

## Thompson *versus* Chase.

1. When the books of the commissioner's office are produced and proved by the proper custodian, it is competent for the opposite party to call a former clerk, to explain entries made therein by himself, while he was the keeper of them.

2. The books of the commissioner's office, although evidence, are not records importing absolute verity, but may be explained.

3. The books of the commissioner's office, showing land regularly assessed, and the amount carried out against it as unseated, for the years for which it was sold, with the treasurer's deed, are all that is necessary to be shown, to establish a *primâ facie* case for the plaintiff.

4. Where in an assessment the quantity of land is designated, the amount due accurately carried out, and where it has been due for more than a year, it is a good foundation for a sale.

5. Taxes due a year, land unseated and so sold, are the essentials to title by treasurer's sale.

6. The commissioners may impose the tax when the land is returned by the county surveyor, and not otherwise assessed, or when a fourfold tax is imposed; and in such cases it should be designated as unseated, and cannot be included in the sale list, until one year after such assessment.

ERROR to the Court of Common Pleas of *Clearfield county*.

This was an action of *trespass quare clausum fregit*, for cutting timber, brought by the plaintiff in error, to which the defendant pleaded "not guilty, and *liberum tenementum*."

By virtue of a sale for taxes and sundry conveyances, Jacob Bowman became owner of 600 acres of unimproved land, part of two tracts surveyed in 1785, on warrants granted to George and Margaret M'Cormick, in 1784. There is an interference of the M'Cormick tracts with two other surveys, made in 1793, on warrants to Robert Wharton and George Scheaff. During Bowman's lifetime, all of his land was assessed on the seated list; but after his decease, his part of the M'Cormick's (which was unimproved, save a few acres cleared over by mistake, by Dunlap, the owner of the William King, an adjoining survey,) was placed upon the unseated list, and taxes assessed thereon for the years 1845, 1846, and 1847. In June, 1848, the treasurer of Clearfield county sold the land for the taxes of 1845, 1846, and 1847, to Isaac Thompson, and by deed acknowledged in open court at September Term, 1848, conveyed the same to him in fee; since which time Thompson has been in possession, paying taxes therefor. The owner of the Wharton and Scheaff tracts, (Schuylkill Bank,) knowing of the interference, ran a line for the Wharton and other tracts, leaving in the Wharton tract about 144 acres and 104 perches. In 1841 the Schuylkill Bank returned for taxation 144 acres and 104 perches of the Robert Wharton tract;

and in 1842,.1843, 1844, 1845, and 1846, the same amount of land.   About the year 1846, Chase, the defendant, became in some way (not shown by the evidence,) interested in the Robert Wharton tract, and the Robert Wharton and other tracts are transferred to Patchin and Chase, on the books of the commissioner's office.   For the year 1847, the return of the Robert Wharton and George Scheaff, appears *to be made as though* each tract contained 433 acres and 153 perches.   But the assessment for that year has written above it the words, "see below;" and below, the number of acres fixed for the George Scheaff is 91, and the Robert Wharton, 179.   For the year 1849, the George Scheaff and the Robert Wharton are returned the same.   For the year 1849, Patchin and Chase return 129 acres of the Robert Wharton, and 91 acres of the George Scheaff. These entries are made upon the land book and treasurer's book, as also the following entries, which were made by direction of Patchin and Chase, viz: after the George Scheaff tract, "only 235 acres left by interferences; 144 acres charged to Z. Poulson;" and after the Robert Wharton tract, "only 179 acres left by interferences; 50 acres seated to C. Gregory, in 1849."   In addition to the line crossing the Robert Wharton tract, and leaving out 144 acres, there is another line crosses the tract at about 30 perches therefrom, which, if taken as the line of M'Cormick's tract, would leave 179 acres in the Wharton tract.   Chase cut a number of timber trees between these two lines, and also on further towards the Little Clearfield Creek, on the M'Cormick surveys, for which alleged trespass this action is brought.   After the plaintiff had shown title, possession, payment of taxes, and damages sustained, the defendant produced warrant, survey and patent to Richard Peters, for the Robert Wharton and George Scheaff tracts, but no title in himself.   The defendant controverted the validity of the title by treasurer's sale.   He also proved that, in 1850, one day before the two years expired from the sale to the plaintiff in 1848, Daniel Bowman and another of the heirs of Jacob Bowman, who claimed the tract, went to the treasurer's office in Clearfield, and paid into the treasury of the county $53.53, the amount necessary to redeem the George and Margaret M'Cormick 600 acres, and took from the officer a regular and formal redemption receipt.   That on the following day, at the instigation of the plaintiff, Isaac Thompson, they *returned to the treasury, lifted their money*, under the protest of the officer, and destroyed the redemption receipt.

Defendant offered the assessor's book of 1844, of Jordan township, and to prove by the witness, H. P. Thompson, that he made the entry of the two M'Cormick tracts in that book, and how he did it, and that he was clerk to the commissioners at the time.

Objected to by plaintiff, that Thompson is not now connected

[Thompson v. Chase.]

with the commissioner's office or clerk, and cannot testify. That parol evidence cannot be introduced to destroy the record.

The court, BURNSIDE, J., overruled the objection and received the evidence, which is the subject of the first assignment of error.

Daniel Bowman (one of the heirs of Jacob Bowman,) being produced on the part of the defendant, the plaintiff objected to the witness being sworn, on account of interest, he having executed no release of his interest in this land until after suit brought. Objection overruled, which is the subject of the second assignment of error.

The court charged the jury as follows: "The plaintiff has shown no such assessment as is required under our acts of Assembly to warrant a sale. The land being seated could not be sold for taxes. It is not necessary for us to comment on the conduct of the plaintiff, in procuring the *bona fide* holder of the land to ask for the return of the redemption money which he had paid, for neither in law nor equity has he such a claim as a court of justice would for a moment recognize, to the land in controversy. Your verdict must be for the defendant."

The charge is the subject of the third, fourth, fifth and sixth assignments of error.

*Crans*, for plaintiff in error, cited 1 Green. Ev. 596; *Dikeman* v. *Parrish*, 6 Barr, 210; *Devling* v. *Williamson*, 9 W. 311; *Hockenbury* v. *Carlisle*, 9 W. & S. 282; *Miller* v. *Hale*, 2 Casey, 432; *Lightner* v. *Mooney*, 10 W. 407; 6 W. & S. 509.

*Wallace*, for defendant in error, cited 9 Watts, 311; 1 W. & S. 282; *Flemming* v. *Parry*, 12 H. 47; *Diamond Coal Co.* v. *Fisher*, 7 Id. 267; *Laird* v. *Heister*, 12 Id. 452; Act 27th May, 1841, Br. Purd. 785, § 86; *Com. Bank* v. *Woodside*, 2 Har. 404; *Milliken* v. *Benedict*, 8 Barr, 168; *Larimer* v. *M'Call*, 4 W. & S. 133; *Carter* v. *Trueman*, 7 Barr, 315; *Wakely* v. *Hart*, 6 Bin. 319; *Kelley* v. *Buchanan*, 2 Har. 59; *Ellis* v. *Hall*, 7 H. 295; *Hunter* v. *Cochran*, 3 B. 105; *Gast* v. *Porter*, 1 Har. 535.

The opinion of the court was delivered October 6, 1858, by

THOMPSON, J.—The most palpable thing about this case is, the obscurity, or, rather, darkness which surrounds it. The dim light shed upon it by the paper books, relieves us but little from the necessity of a laborious scrutiny to discover the true nature of the controversy; nor does the charge of the court below aid us. The court gave no reasons for their conclusions, and as neither party submitted any points, we are to measure the charge by general principles, without knowing whether there was anything exceptional in the case or not.

[Thompson *v.* Chase.]

1. First, then, as to the bills of exception to the reception of evidence.—The books of the commissioner's office having been produced and proved by the proper custodian, it was certainly competent for the opposite party to call and examine a former clerk, to explain entries made therein by himself while he was the keeper of them. These books, although evidence, are not records importing absolute verity, but may be explained. There was no error in the ruling on this point.

The witness, Bowman, stood clear of any such interest in the controversy as would exclude him from testifying. The verdict and judgment could never be evidence for or against him. Besides, any interest he may have had, he had, previous to the trial, transferred to a stranger to the controversy. He was rightly admitted to give evidence.

2. Errors assigned to the charge of the court.—The court charged that "the plaintiff had shown no such assessment as is required under our Acts of Assembly, to warrant a sale," and directed a verdict for the defendant. Why so?

The books of the commissioner's office showed the land regularly assessed, and the amount carried out against it as unseated, for the years for which it was sold. This, with the treasurer's deed, was all that was necessary to be shown, to establish a *primâ facie* case for the plaintiff. These books are expressly made evidence of the assessment of taxes, by the Act of 12th April, 1842. They were so, however, before the passage of that act.

Was there anything in the parol testimony, so incontrovertibly decisive, as to overthrow the case thus made, and to call for a binding direction that the assessments were void. There may be cases in which the facts proved are so indisputable, that a judge may be justifiable in taking them as ascertained things, yet the jury must, nevertheless, pass upon them; but here, if there was any materiality in the evidence, which we do not perceive, the binding direction was wrong; it was for the jury. If there was nothing, the judgment was wrong, for the reason that the assessments, as evidenced by the books, stood good and valid, and the charge should have been the other way, as to that matter.

It appears from the parol testimony, that, after the 1st of January, 1846, and within that month, (as we would infer,) the taxes due and assessed upon the land for the years 1845 and 1846, were transferred to the unseated list by order of the commissioners, by entry on the assessor's duplicate; and for those, and the taxes of 1847, the land was sold in June, 1848. If there be any standard for the accurate assessment of land which is unseated, and this proceeding was not according to it, the departure from it was but an irregularity, at most, which would not invalidate the sale. The quantity of the land was designated,

[Thompson *v.* Chase.]

the amount due was accurately carried out, and had been due for more than a year before the sale. This constituted a good foundation for a valid sale.

In *Russell* v. *Werntz*, 24 State Rep. 337, and in *Laird* v. *Heister*, Ib. 453, it is settled, if it had not been before, that when land is indiscriminately assessed, (seated and unseated in the same duplicate,) and the tax has remained due and unpaid for more than a year, such land, if unseated, may be placed on the list of unseated lands, and sold without having been on such list for "one whole year;" and if the land was in fact unseated, the title will be good. The advertisement and sale, under the Act of 1815, must be of unseated lands; and then title will depend solely on the facts of whether the land was unseated, and whether a tax regularly or irregularly assessed, had been due a year before the sale. Taxes due a year, land unseated and so sold, are the essentials to title. The Act of 1842 but declared what the law had been adjudicated before, that the books of assessment of taxes in the office, are evidence of assessment. It is the books we have to do with, and not the form or manner in which they are kept; and this was distinctly held in *Laird* v. *Heister*, (*supra*.)

There are cases, however, in which the commissioners may impose the tax, as when the land is returned by the county surveyor, and not otherwise assessed, or where a fourfold tax is imposed. In such cases it should be designated as unseated, and cannot be included in the sale list, until one year after such assessment, as in other cases.

But there are cases in the books, such as *Larimer* v. *M'Call*, 4 W. & S. 133; *Milliken* v. *Benedict*, 8 State R. 169; *Commonwealth* v. *Woodside*, 14 Id. 404; and perhaps one or two others, in which notice to the owner, of the transfer from the seated to the unseated list, when practicable, was required in order to render the sale valid. There are exceptional cases, as was said in *Laird* v. *Heister*, resting upon a supposed arrangement between the taxing officers and the owners, that the land was to be treated as seated, and the tax collected as if such were the case. Without discussing the wisdom or propriety of making or recognizing such arrangements, or impugning their soundness at this time, we say the doctrine is only applicable to a state of facts in which such arrangement is apparent; to no other. We leave owners to take notice that their lands are unseated, if they are so; and if they do not pay their taxes, they cannot complain if they are sold. As there was no arrangement pretended, to bring this case within the exceptional cases, (the owner, in fact, not being a party to the suit, nor any one claiming under him,) the doctrine would present no grounds for the charge of the court.

As the case stood, therefore, on the assessment and sale, it was with the plaintiff, for anything we can discover. But there were other grounds of defence, which, if established, would avail the defendants. They must only be allowed to accomplish this result, however, according to the rules of law and the practice of the courts. If dependent on facts, they must be submitted to the jury; the court cannot determine them. We learn from the paper book of the defendant, that he claimed that the land was, in fact, seated during the years for the taxes of which it was sold. Also, that upon the *locus in quo*, the taxes had been paid. Either of these things would be a pretty effectual defence; but being questions of fact, would be for the jury, and not for the judge, to determine; and if, in view of such facts, the binding direction was given, to return a verdict for the defendant, it was error.

We see no effect prejudicial to the plaintiff, likely to have followed the remark of the learned judge, assigned as error in the fourth specification. If the remark was made to convey the idea that the owner could not withdraw his redemption, if done shortly after it was made, and take back the redemption money, with the permission of the treasurer, and consent of the purchaser, and permit the sale to stand, we think it would have been error. He could, undoubtedly, do so. But it is not easy to say whether this was the intent and meaning of the remark, or not.

For the reasons given, this judgment is reversed and a *venire de novo* awarded.