## Bechdle *versus* Lingle *et al.*

1. Unseated land returned as seated cannot be charged to the unseated list without notice to the owner when practicable.

2. Unseated land had been on the seated list for many years, but had been on *no* list for three years, including 1861. On the triennial assessment of 1862 it was returned as unseated, and sold in 1864 for taxes of 1862 and 1863. This, under the circumstances, was an original assessment and not a case for notice to the owner.

3. The assessment of unseated land on the seated list does not change its character so as to render it incapable of sale for taxes.

4. An owner claiming a right to be notified that his land is on the unseated list, must have reason to expect that it was on the seated list.

5. An owner who has paid no taxes at all on his land for three years is not entitled to notice of its change to the unseated list.

May 16th 1870.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Centre county*: No. 6, to May Term 1870.

This was an action of ejectment brought to January Term 1867 by Christian Bechdle against Simon Lingle, Benjamin Ligget and others for 132 acres of land in Liberty township.

The case was tried, February 3d 1868, before Barrett, P. J., of the Twenty-second District.

The plaintiff gave in evidence: warrant July 31st 1793 and survey November 31st to John Potter for 396 acres; treasurer's deed November 20th 1822 to Christian Bechdle and John Ligget, Jr., for the "John Potter" tract. There was evidence that Bechdle and Ligget had made an amicable partition of the tract in 1824, Bechdle taking the eastern part, and Ligget the western. Bechdle's part was in the vicinity of his mansion and farm, and it appeared had been used continuously for a great number of years for fire-wood, rails, &c., for the mansion and farm. Bechdle by his will, proved March 18th 1851, devised two-thirds of this tract, calling it his "timber land on Muncy mountain," to his son, the plaintiff, and the other third to Samuel Bechdle, another son. From 1824 until about 1850 or 1851 the tract was assessed on the seated list to the elder Bechdle as containing different numbers of acres from 96 to 196. For several years commencing with 1853, the land in controversy was assessed on the seated list as 50 acres. From 1859 to 1862 it was not on the seated list, and during those years no tax at all had been paid for it. In 1862 the plaintiff was one of the assistant assessors of Liberty township. For the years 1862 and 1863 it was assessed as 50 acres on the unseated list in the name of the plaintiff, and sold for taxes to Simon Lingle, the defendant, on the 13th of June 1864, and the treasurer's deed acknowledged August 24th.

The questions of fact which arose on the trial related princi-

[Bechdle v. Lingle.]

pally to the partition, the assessment and tax sale.   There were
no points submitted by either of the parties :—

The court charged : * * *

"From 1859 to 1862, inclusive, that portion of the tract was
not assessed in the seated list, where it had been for over thirty
years.   It has not been shown that any tax was paid upon it as
seated for those years.   For the years 1859, 1860 and 1861 it
seems to have escaped taxation altogether.   For the years 1862
and 1863 it was assessed and returned for taxation as unseated
land, and for the taxes of those years it was sold to Simon Lingle.
The sale was regular.   If the assessment was regularly made and
is sufficient to charge the land with taxes for those years, the
treasurer's deed conveyed a good title.   Objections have been
made to the assessment, but it is shown to have been returned in
a list of other lands by the proper assessor, in the usual manner,
and with a valuation attached to it.   The principal objection
is, that it was changed from the seated to the unseated list
without notice to the owner.   But that is not the case.   It had
not been in the seated list for three years.   It was a tract not
assessed at all and was in fact unseated.   It was not necessary to
hunt up the owner and give him notice that it was about to be
assessed in the unseated list of lands for that township.   It is not
even important that the present plaintiff, who was then the owner
of the land, was one of the assessors who made the assessment and
return, nor that from such circumstance notice might be presumed,
because notice was not required.   It was, as is admitted on all
sides, an unseated tract of land; was returned as such by the
assessor at a time when it was nowhere assessed; it stood on the
books of the commissioners so assessed for two years; at the pro-
per time the taxes for 1862–3 were charged against it; it was
advertised and sold; the two years for redemption passed and now
the treasurer's vendee is here claiming the land."

"The sale was for 50 acres of the 'John Potter' survey; we
are not shown how much land the eastern half contained.   Mr.
Mitchell, the surveyor, says that it was interfered with by older
surveys, which reduced the number of acres as originally claimed
for it, how much he could not say.   There is evidence also that
the eastern half was divided so as to give the present plaintiff two-
thirds and his brother one-third."

"The whole case is thus narrowed down to the question of fact
which must go to the jury.

"If the jury believe from all the evidence, that a division of
the tract was made between John Ligget and Christian Bechdle,
and that Bechdle thereby became the owner of the eastern half of
the tract, they are instructed that Benjamin Ligget has no title
to any part of it, and that he, as one of the defendants, cannot
resist the plaintiff's recovery.   If otherwise, he would have the

interest of one of the heirs of John Ligget in the undivided half part of the tract.

["If Lingle, another defendant, can hold any part of the tract, it must be under the treasurer's deed. Does the evidence show that the 50 acres sold covered the plaintiff's part of the Potter survey? The only evidence is that it was sold as the land of Christian Bechdle. No warrantee name is given and no other description. If there was a regular assessment of the taxes, and if the jury are satisfied that the treasurer's deed to Lingle covers Bechdle's part of the survey, although the number of acres may not be exactly correct, he is entitled to the land covered by his deed, and for that the plaintiff cannot recover. If it covers the whole you should find for the defendants. If the assessment was irregular, or if the sale did not cover the land in dispute, you should find for the plaintiff."]

*J. A. Beaver* and *H. N. McAllister*, for plaintiffs in error.— The tract could not be removed from the seated to the unseated list without notice: Larimer *v.* McCall, 4 W. & S. 136; Commercial Bank *v.* Woodside, 2 Harris 409; Milliken *v.* Benedict, 8 Barr 169; Stewart *v.* Trevor, 6 P. F. Smith 383.

*Orvis & Alexander*, for defendants in error.

The opinion of the court was delivered, July 7th 1870, by

THOMPSON, C. J.—Regarding the principle as conclusively settled by Larimer *v.* McCall, 4 W. & S. 133, Milliken *v.* Benedict, 8 Barr 169, The Bank *v.* Woodside, 2 Harris 404, Stewart *.v.* Trevor, 6 P. F. Smith 374, and other cases, that unseated lands assessed and returned as seated, cannot be changed from the seated to the unseated list without notice to the owner when practicable, and sold for taxes; does the doctrine apply to the case in hand? The court below thought not, and we see no solid grounds upon which to differ with it.

The land in question was, in point of fact, undeniably unseated, although it had been for many years generally returned as seated, and the taxes collected in that character. In 1859, 1860 and 1861, it appears to have been dropped from both lists, and was not assessed at all, either as seated or unseated. In 1862, the year of the triennial assessment, it was assessed and returned by the assessor as unseated, and charged with the taxes of that year and the next, 1862 and 1863, on the unseated list. It is apparent, that it did not come upon the unseated list by the return of the collector or other action of the county commissioners. It was the act of the proper assessing officers. It was an original assessment of land which was on no list. It was not a case for notice to the owner. He could not claim he was deceived in finding it on the

[Bechdle *v.* Lingle.]

unseated list for the years in question, for it was on no other. The considerations which gave rise to the decisions referred to, namely, that the owner had a right to expect his land to be where he annually found it when paying taxes, viz., on the seated list, did not exist in this case. The equitable doctrine of the cases cited was introduced to prevent surprise and undue advantage of owners. It is only this which gives it life. It is not to be supposed that the assessment of unseated lands on the seated list works a change of their actual character, to the extent of rendering them incapable of sale for taxes, as is the case with lands actually seated, excepting under the Act of 1844. This was never meant by these decisions. The party invoking the benefit of the rule of the cases must be within it. He must show that he had reason to expect his land was on the seated list. But how could he avail himself of this plea when he had not paid any tax on it upon this list, or any other, for three years? It was either gross negligence on part of the owner, to let his land go to sale for taxes, or a disposition to risk the consequences rather than pay; neither of which dispositions appeal very strongly to the sympathies of anybody. In fact, the plaintiff was one of the assistant assessors for the year 1862, which gives countenance to the idea just advanced. So far as any question was made of the identity of the land sold with that assessed, it was left to the jury on the evidence in the case, and found against the plaintiff. Nor do we see any error in the remarks of the judge accounting for the discrepancy between the amount of land assessed and sold, and that devised to plaintiff by his father. There was testimony on the subject which justified the remarks.

There is nothing else in the case which needs notice, and there being no error in the case,

　　　　　　　　　　　　　The judgment is affirmed.