4w351
141 347

## M'Call *against* Lorimer.

Whether a tract of land is seated or unseated, and has been assessed, taxed and sold by the treasurer as such, must depend upon the records of the commissioner's office, and not upon parol testimony as to the fact, or the private duplicate of an assessor.

ERROR to *Butler* county.

The plaintiff, Archibald M'Call, gave in evidence a regular title from the commonwealth to the land in dispute: the defendants, the heirs of Alexander Lorimer deceased, claimed title by virtue of a sale for taxes by the treasurer. The records of the commissioner's office did not show that the land had been assessed and taxed as unseated; but they offered to prove by Moses Hanlin, that " he was the assessor for 1814, and took down four hundred acres from the preceding duplicate: he called at Lorimer's house and he was from home, and then put down in the seated list four hundred acres: the next week he saw Lorimer, who told him he would not pay for more than two hundred acres: that he then altered the assessment in his own duplicate, charging him with two hundred acres in the seated and two hun-

[M'Call v. Lorimer.]

dred acres to Nicholas Day in the unseated list: that he returned the one he got from the commissioners to the office and did not know, until he saw it in court, but what he had altered it also." The plaintiff objected to this evidence on the ground that the assessment of unseated land cannot be established by parol evidence, and which, in this instance, goes to contradict the written evidence of assessment; but the court overruled the objection, and the testimony was given. The defendants then offered in evidence the private duplicate of Moses Hanlin, which he kept; the private duplicate of the supervisors, and their assessment of road taxes; the list of lost taxes returned by the collector into the commissioner's office; the record of an agreement between John Lorimer and Nicholas Day; the sale book of the commissioners; the surplus bond of Edward Duffy; and a deed from Hugh M'Kee, treasurer to Edward Duffy, for two hundred acres, "part of John Lorimer's tract," dated the 11th of August 1817. This evidence was objected to by the plaintiff; but the court overruled the objection, and the evidence was given. The jury found a verdict for the defendant.

The errors assigned were, in admitting the evidence mentioned in the first and second bills of exception.

*Evans* and *Ayres*, for plaintiff in error, cited, Birch *v.* Fisher, 13 *Serg. & Rawle* 208; Waln *v.* Shearman, 8 *Serg. & Rawle* 368; Burd *v.* Ramsay, 9 *Serg. & Rawle* 109; Cox *v.* Grant, 1 *Yeates* 164; Stewart *v.* Shoenfelt, 13 *Serg. & Rawle* 361.

*Sullivan*, for defendant in error, cited, Parker *v.* Loughborough, 10 *Serg. & Rawle* 249; Hubley *v.* Keyser, 2 *Penns. Rep.* 501.

The opinion of the Court was delivered by

HUSTON, J.—Ten years ago we find in 13 *Serg. & Rawle* 360, the case of Stewart *v.* Shoenfelt, the first case in Pennsylvania in which a purchaser of a tract of land sold for non payment of taxes, succeeded in holding the land. This was also the first reported decision under the act of the 13th of March 1815. We seem now to have come to the opposite extreme, and to doubt whether in any case, under any circumstances, a title under a sale for taxes can be invalid. Under the provisions of the former acts, no sale had been held valid; because some one thing in the process of assessment or sale had been omitted or done irregularly; or, if all had been done regularly, some of the evidences of regularity, though every body knew they existed a few weeks before the trial, yet, at the trial, were not found. This state of things led to the act of 1815, which, among other things, provided, "that if the owner of land sold for taxes shall within two years after such sale make a tender of the amount of taxes for which the land was sold, and costs, with the additional sum of twenty-five per cent on the same, to the county treasurer, who is hereby authorized and required to receive the same, and pay

it over to the said purchaser on demand ; and if it shall be refused by the said treasurer, or in case the owner or owners of land so sold shall have paid the taxes due on them previously to the sale, then, and in either of these cases, said owner or owners shall be entitled to recover the same by due course of law ; but in no other case, and on no other plea shall an action be sustained :" and "that no alleged irregularity in the assessment, or process, or otherwise, shall be construed or taken to affect the title of the purchaser; but the same shall be declared to be good and legal." This act does not purport to lay down an entire system ; it does not alter the jurisdiction of the commissioners, or extend their authority to sell for unpaid taxes any other than unseated lands ; lands on which a person is residing are as much exempt from sale by a treasurer as before the passing of this act ; so too the treasurer is authorized to make sale of the whole or any part of such *tracts of unseated lands,* situate in the proper county, as will pay the arrearages, any part of which *shall have remained due and unpaid* for the space of one year.

Taxes cannot be due unless they have been assessed. Words and names often mislead. There is in each township of every county an officer called the assessor ; and it is too often assumed that he assesses the taxes. By the act of the 11th of April 1799 for raising county rates and levies, it is thus directed—

Section seven. The commissioners shall make an estimate of the probable expense of their county for the ensuing year, and issue their precepts to the respective township assessors, requiring them to make *a just and perfect return* of the names of all persons within their wards, townships or districts, and of all property made taxable by this act, within thirty days after the date of such precept, together with a just valuation of the same ; *and on the receipt of such return* the commissioners shall proceed to quota the townships agreeably to the quantity and quality of the land and other taxable property ; and when they shall have completed and ascertained the quotas of each township, shall cause accurate transcripts of such assessments to be made out by their clerk, and transmit them to the ward or township assessors. It then directs notice to be given of the time and place of appeal, at which appeal a board of commissioners shall attend, and hear all persons who may apply for redress, and grant such relief to them as may appear just and reasonable.

Section nine directs, that in each of the two years succeeding the triennial assessment, the commissioners shall send a transcript of the last triennial assessment to the assessors of each township or ward ; who shall note all changes of persons or property, and *make a just return to them* within thirty days from the date of such precept, with the like provisions as in the last quoted section.

Section ten. The commissioners shall, immediately after the appeals are over, regulate the assessments according to the alterations made, and cause their clerk to make fair duplicates thereof, &c.

Section fifteen. The commissioners shall issue their warrants, with

IV.—2 U

[M'Call v. Lorimer.]

the duplicates, to the respective collectors, authorizing them to demand and receive of and from every person in such duplicate named, the sum wherewith such person stands charged.

By the second section of the act of the 3d of April 1804, all unseated lands in this commonwealth, held by individuals, companies or bodies corporate, shall, for the purpose of raising county rates and levies, be valued and assessed in the same manner as other property.

By the act of the 6th of April 1802, the supervisors of the roads are to levy a tax on all property made taxable by the above cited act of the 11th of April 1799 ; and in assessing said tax the supervisors shall take to their assistance the assessor for the time being, whose duty it shall be to furnish a *correct copy* of the last valuation of property in said township, and assist in making the assessment; and the amount of taxable property, trades, professions and occupations shall be taken from the *last return of taxable property* made in the township for the last county tax, and apportioned on the inhabitants in proportion to the last *corrected apportionment* of the county taxes, put into the hands of the township collectors. It then provides that if they shall discover any property overlooked by or concealed from the township assessor they shall assess it ; but the law gives no power to change the property or valuation before made.

Section seven directs the supervisors to make out and return to the commissioners a fair transcript of the tax due and unpaid on the several tracts of unseated land.   I would remark here that the list of unseated lands returned by the supervisors to the commissioners was before us : in this the part of John Lorimer had been inserted as belonging to Nicholas Day, but the name, quantity and sum were erased.

The facts of this case were; that John Lorimer settled about 1798 on the tract in question, under a contract with Nicholas Day, (probably the agent of Archibald M'Call) by which Lorimer was to have two hundred acres for making the settlement. On the 14th of March 1817, a patent was obtained in the name of John Lorimer for four hundred and thirty nine acres one hundred and four perches. On the 4th of June 1817, Lorimer conveyed two hundred and thirty-nine acres to Archibald M'Call.   John Lorimer in 1817, or probably before, had sold his two hundred acres to Edward Duffy.   The plaintiff also showed the duplicate of assessment of Donegal township for 1815, in which John Lorimer is taxed for the whole tract as seated, and in his possession.

The defendants offered to prove by Moses Hanlin, "that he was assessor in 1814, and for the year 1814 : that he took the whole number of four hundred acres from the duplicate of the preceding year : that he called at Lorimer's house and he was not at home, and he put down in the seated list four hundred acres : that next week he saw Lorimer, who told him he would not pay for more than two hundred acres; that he then altered the assessment in *his own duplicate*, charging him with two hundred acres in the seated, and two

[M'Call v. Lorimer.]

hundred acres to Nicholas Day in the unseated : that he returned the duplicate he got from the commissioners to the office, and that he never knew until he saw it in court but what he had altered it also."

This was objected to, but admitted, and exception taken.

The defendants then offered in evidence the private duplicate of Moses Hanlin which he kept; also the private duplicate of the supervisors and their assessment; the list of lost taxes returned by the collector into the commissioner's office; the agreement between John Lorimer and Nicholas Day; the sale book of the commissioners; the bond of Edward Duffy for the surplus purchase money after paying taxes; the treasurer's deed to Duffy for two hundred acres, part of John Lorimer's tract, dated the 11th of August 1817 : all of which were objected to, but admitted, and exception taken.

The two bills of exception depend on the same principle. I shall consider them together.

It is material to recollect that in the duplicate returned by Hanlin to the commissioners, the whole tract is assessed to John Lorimer, and of course the tax of the whole tract is put in the collector's duplicate ; in no official paper is any tax charged to any part of it as unseated land.

It will be seen by the acts cited, that although the assessor was to perform a part in imposing a tax, yet all that he did was *to be returned to the commissioners ;* they were to decide the amount of tax to be levied—to decide the rate per cent to be levied from all property valued and returned by the assessors. They were to hold appeals in every township to correct any errors by the assessor. They, after this, were to make a fair duplicate of all as corrected, and this was to be sent to the collector. The present case presents the question, whether the assessor alone can impose a tax, in a manner of which he gives the commissioners no notice, of which the collector is not informed, for it is not in his duplicate, and of course he can neither demand nor recover : it is more than that, it is whether the assessor can value and return a tract as seated, and the commissioners authorize their collector to receive the tax for the whole tract as seated, and the assessor, by what he calls his private duplicate, assess on half of it an additional tax as unseated ; for the whole being regularly taxed as seated, the charge on part as unseated, is an addition— it is taxing that part twice in the same year. Now this cannot be done. It presents a strange question, when courts and judges have said there must be unseated land, a tax assessed and due—and then a sale may be or must be valid ; such a case as this never occurred to them. There is no law which authorizes two distinct taxes for county rates and levies on the same land in the same year ; and no law which enables an assessor to impose a tax without the commissioners knowing of it, or having in their office any means of knowing of it. It is, I think, very unusual for an assessor to keep a copy of his duplicate. The law gives no validity or effect to it more than if made by a stranger. I will not say that there may not be cases where, if

the one returned to the commissioners was lost, a sworn copy would be used in its place; but I do say, that where the duplicate returned to the office of the commissioners, the one sent to the collector, and every paper in the commissioners' office shows one and the same thing, a copy made and kept by the assessor, or any other person, cannot be received to overturn the whole record. I will suppose Moses Hanlin to be a man of unquestionable veracity: but if he can do this, every assessor can do it; if he made the alteration a week after, in his own copy, another may do it a year or five years after; and the records of that office are worse than useless. It is twenty years since Moses Hanlin was assessor; during all that time this land had not appeared charged with this tax. It is idle to talk about land being untaxed in all records, and in the minds of all officers for twenty years, or any year, and yet being liable to be sold, and the sale made good by a private paper of any man. The oath and the private duplicate were equally inadmissible.

But it was said the collector for 1815 was exonerated from the tax of John Lorimer for that year. Will this make a tract unseated which had been farmed from 1798 till that time, and has been ever since? But this, when inspected, proves too much: the collector was exonerated from the whole tax on all land taxed to Lorimer, and from the tax on his horses and cows; it does not show an exoneration for part of the land as unseated, but of the whole tax.

Lorimer might have returned all but his own two hundred acres unseated; and if this had been done, and so returned to the commissioners, all would have been right; nay more, if nothing on the subject appeared on the records of the commissioners, it would present a different case; but there is no paper lost; every thing is in the commissioners' office which ought to be there; and this whole tract is taxed as settled, and the collector is authorized to collect the tax for the whole of it; he neglects to do so and is exonerated. Nothing shows this land to have been unseated. It was not unseated; but parol evidence, and a useless paper, are to vacate all the acts and all the records of the county, and divest the title of a tract of land.

Let me be understood. The sale by a treasurer may be good though any one of the several documents showing the assessment is lost or is irregular; nay, after a lapse of time, perhaps it may be supported, where all the evidences of regularity are lost or destroyed; and in such cases the oaths of persons may be admitted to prove that they once existed. But this is a very different case. Every document is, as I understand it, still found, and all agree in taxing the whole of the tract as seated land. There is no allegation that any paper in the office has been altered—all is plain; but the offer was to set aside all this on the oath of a man as to what he did twenty years ago, and intended to do twenty years ago; and by the production of an unofficial paper, never seen till this trial, and which, I repeat, cannot overturn the records of the commissioners' office. Nothing done by the assessor is of any validity but what is returned to the commissioners; what is not returned to them is null. Mistakes may be cor-

[M'Call v. Lorimer.]

rected at the appeal, or perhaps at any time within the year ; but titles to land cannot depend on unofficial papers and the oaths of individuals who have neglected or exceeded their authority ; and this, too, in opposition to the regular office documents.

Judgment reversed, and a *venire de novo* awarded.