# Dunn *against* Ralyea.

It is essential to the validity of a sale of unseated land for taxes, that it should be so designated in the assessment as to lead the owner to a knowledge of the fact that it is his land which is assessed.

The number of a tract of donation land marked upon the ground, is the best evidence of designation, and must prevail where it differs from all others.

> 6ws475|
> 166  377|
> 6 WS 475|
> 31 SC ¹345|

ERROR to the District Court of *Mercer* county.

This was an action of ejectment by Thomas Dunn against Henry Ralyea, to recover 200 acres of land, being tract number 1031, in the 5th donation district.

The plaintiff gave in evidence a patent from the Commonwealth, dated 17th July 1789, for lot No. 1031, of 200 acres in the 5th donation district, and sundry mesne conveyances by which the title became vested in him.

The defendant gave in evidence a connected draft of the 5th donation district, in which the land in dispute was designated as tract No. 1029, and as such assessed with taxes for the years 1809 to 1817 inclusive, and on the 3d Nov. 1818, sold by the treasurer and purchased by the commissioners, who in 1823 sold the same to Hugh Moore and Hugh Evans, under whom the defendant claimed.  The jury found the following special verdict:

[Dunn v. Ralyea.]

"We find this tract, No. 1031, is the land in controversy; that it was assessed as No. 1029 in 1816—1817, with county taxes. That in the commissioners' office there was a certified draft of the 5th donation district at the time, and had been since 1804, which represented the tract in dispute as 1029, from which the commissioners annually made out the duplicates for the assessors. That it was taxed in the name of Jacob Herrington, who had, it appears, once received an acknowledgment of a treasurer's deed for it, and which gave rise to the change in the assessment from the name of John Pearson to Jacob Herrington. That two of the supervisors of French Creek township for 1816, laid the road tax of 1816 on the tract in controversy. That it was sold as 1029, and by this number, for the taxes of 1816 and 1817, on the 3d Nov. 1818, to the commissioners of Mercer county, for the taxes and costs, being $12.92, and a deed executed by the treasurer dated 3d Nov. 1818, and acknowledged 13th Nov. 1819, and was afterwards regularly sold by the commissioners of the said county to Hugh Moore and Hugh Evans, for $41, on the 22d Nov. 1823. That this title was regularly vested in John Sheakley, under whom defendant takes defence. We further find that 1029 is on the ground located two tracts north of this, and has been seated since 1804, and that John Pearson brought suit for it on the 7th August 1816. If the court are of opinion that the plaintiff is entitled to recover, notwithstanding this treasurer's title, and by reason of the assessment being made as 1029, when the real number on the ground is 1031, then we find for the plaintiff; but if the court be of opinion that the sale is valid for the facts offered, then we find for defendant."

The court below rendered a judgment for the defendant.

*Stuart* and *Pearson*, for the plaintiff in error, argued that the error in the assessment was fatal to the defendant's title: that a designation of the tract, such as would lead the owner of the land to the knowledge of the fact that it was his land which was assessed, was essential to the validity of a treasurer's sale of unseated land; and cited 5 *Rawle* 348; 13 *Serg. & Rawle* 306; 4 *Watts* 363; 3 *Watts* 238; *Act of* 1834, *Purd.* 206, *sec.* 26, 7, 8.

*Foster*, with whom was *Sullivan*, for the defendant in error.

So far as regards the deed from the commissioners to Moore and Evans, it is enough to say that the Act of Assembly does not require the use of the county seal. The commissioners are a corporation, and the execution and delivery of the deed was valid, although not done by the same persons who made the sale.

The sale by the treasurer to the county was evidence of an outstanding title, and would defeat the plaintiff, even although the sale by the county to Moore and Evans was invalid.

The record of the acknowldgement was clearly evidence for the

[Dunn v. Ralyea.]

purpose of showing the reason of a change in the assessment. From the decisions on the subject of tax titles, the great matter appears to be to identify the land, and it was expressly offered and received for this purpose alone. *Strauch* v. *Shoemaker*, (1 *Watts & Serg.* 175) ; *Luffborough* v. *Parker*, (16 *Serg. & Rawle* 351) ; *Harper* v. *M'Keehan*, (3 *Watts & Serg.* 246) ; *M'Cord* v. *Bergautz*, (7 *Watts* 490) ; *Morton* v. *Harris*, (9 *Watts* 323) ; *Caul* v. *Spring*, (2 *Watts* 396) ; *Fager* v. *Campbell*, (5 *Watts* 288).

That the land was unseated up to probably 1838, was fully proved. A certified copy of the draft of the 5th donation district was used in the proper office from the organization of the county to guide assessors. The land in dispute was represented on that draft as No. 1029, and as such was assessed, and during all this period the tract alleged by the plaintiff to be 1029 was seated.

The cases already cited show it to be unnecessary to assess in the name of the owner. Is the number a more sure mode to identify ? The question of identity is for the jury, and they have decided it. *Stewart* v. *Shoenfelt*, (13 *Serg. & Rawle* 360) ; *Burns* v. *Lyon*, (4 *Watts* 367) ; *Hubley* v. *Keyser*, (2 P. R. 502).

The owner of 1031 knew he owned unseated land in Mercer county ; there is no evidence he ever offered to pay his quota of the public burthens ; there was not even an allegation of the kind.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned in this case, founded on two bills of exception taken by the plaintiff to the opinion of the court, admitting evidence objected to by him, is of no moment, and need not be considered, as we are of opinion upon the facts found by the jury, notwithstanding the admission of it, that the plaintiff is entitled to recover. We therefore proceed to the consideration of the second error, which brings in question the judgment rendered by the court below, in favour of the defendant, on the special verdict of the jury.

The plaintiff claims the land in controversy as a *bonâ fide* purchaser thereof, from those who claimed it under Joseph Cox, to whom the Commonwealth granted a patent for the same, designating it as number 1031 among the donation tracts of land situate in the 5th district. The jury have found that it is so numbered and marked on the ground, but according to a copy of a general draft of the surveys made of the lands in that district, certified from the surveyor-general's office, it is numbered 1029. The jury have also found that it was assessed with taxes as 1029 in the years 1816 and 1817, in the name of a Jacob Herrington, to whom an acknowledgment of a deed of conveyance purporting to have been made previously by the treasurer of the county, founded on a sale for taxes, was shown by the record of said acknowledgment. That a sale of the land for the taxes so assessed was made to the com-

[Dunn v. Ralyea.]

missioners of the county, who afterwards sold it to Hugh Moore and Hugh Evans, from whom the title so acquired passed, and became ultimately vested in John Sheakley, under whom the defendant claims.   Now in assessing unseated lands, it is indispensably necessary that they should be designated or described in such a manner as will or may lead the owners thereof to a knowledge of their being assessed, otherwise it is impossible that they can or ought to be considered as knowing, and therefore delinquent on account of the non-payment of taxes of which they had no means afforded by the assessors, such as are clearly required by the several Acts of Assembly on the subject, of knowing or ascertaining that their lands are assessed.   To deprive them of their right to their lands by a sale of them for taxes, without their having the requisite means afforded them of knowing and ascertaining that they have been assessed, would not only·be unjust but iniquitous in the extreme.   The question, then, presents itself, was such means afforded the plaintiff in the present instance, of knowing and ascertaining that his land the land in question, was assessed? He knows that his tract, as called for in his patent, was number 1031, and that it was so numbered on the ground; and upon inquiry, from all he did or could well know, it is plain that he would not have found that number 1031 was taxed, *eo nomine*, or by any other description that would naturally lead him to a knowledge of the fact that it was so.   But it is said that he ought to have looked at the general draft in the office of the commissioners of the county, which would have shown that the tract claimed by him was there numbered 1029, and that by the books of the commissioners he would have found that it was assessed as unseated land.   But why should he have resorted to the general draft, when he had higher and better evidence to resort to for the purpose of ascertaining the location and identity of his tract?   In 1816 and 1817, when the taxes for which it was sold in 1818 were assessed, the general draft was not made evidence, for such purpose, in any case.   It was not until the 24th of March 1818, that an Act of the Legislature was passed making it so, in cases where the original marked lines could not be ascertained.   That the original lines, as found marked on the ground, must govern in determining the location and extent of the survey, is a well-established rule, in general, applicable to all cases; but the numbered corner of a donation survey, of itself, is sufficient to designate and determine the location of the tract, when it can be ascertained, and will overrule any calls contradicting it, either in the return of the survey or in any general draft that may be made exhibiting it.   In short, it controls everything.   This was settled in *Smith* v. *Moore*, (5 *Rawle* 353). It was settled there, also, that the general draft was only, at least, secondary evidence under the Act of Assembly, and admissible only when the original number on the ground cannot be found;

[Dunn v. Ralyea.]

which is in accordance with one of the most familiar rules of evidence. We know, in point of fact, that the marks made on the ground at the time of making the survey, are the original, and, therefore, the best evidence of what is done in making it; that everything that is committed to paper afterwards, in relation to it, is intended, and ought to be, as it were, a copy of what was done and ought to appear on the ground, in the doing of which errors may be committed, which renders it less to be relied on than the work as it appears by the marks made on the ground.

But the proviso in the close of the second section of the Act of 1818 shows, beyond all possibility of doubt or cavil, that the provisions of the Act have no application or bearing on this case, where the plaintiff is a *bonâ fide* purchaser. The words of the proviso are : " that nothing in this Act contained shall be construed to affect the rights of *bonâ fide* purchasers in cases where the original marked lines can be ascertained." The plaintiff, therefore, when he came to inquire and ascertain whether his land was taxed or not, had only to inquire at the commissioner's office of the county, or at the treasurer's office, whether any assessment had been made on number 1031, or not, and as he must have received a negative answer, he had no occasion to inquire further. And if he had even been told, upon such inquiry, that there was no assessment on number 1031, but 1029 was assessed as unseated land, it is impossible to conceive how he should have imagined, from this information, that in assessing 1029 the commissioners intended and did actually assess 1031. Instead of coming to such a conclusion, it is plain that the only natural, and, indeed, rational conclusion would have been, on his part, that in assessing 1029, 1031 could not have been intended. The circumstance of its being assessed in the name of Herrington, was not calculated, in the slightest degree, as has been argued, to change this conclusion; for the name of Herrington had never been known to have been connected with the ownership of the tract numbered 1031, but with that of 1029 it would seem that it had, which was, if possible, calculated to mislead the plaintiff still further. The sale, therefore, of 1031, for taxes, even if it could with any propriety be said to have been sold on such account, must be considered as a sale made without any taxes having been previously assessed on it, and, therefore, absolutely void : or, giving to it the most favourable construction that it will admit of, which is, that it was assessed by the commissioners according to the designation given to it on the general draft in their office, which is 1029, but clearly erroneous, yet the plaintiff having better and higher evidence of the designation of his tract than the draft in the commissioner's office, was not bound to recur to it for the purpose of ascertaining whether his land was assessed or not; and finding that there was no assessment of his tract according to the marked corner on the

[Dunn v. Ralyca.]

ground, or the description contained in his patent, he was justified in coming to the conclusion that it was not assessed, and, therefore, that no taxes remained to be paid on it.   So, under this view, the sale must be considered void.

Judgment reversed, and judgment entered on the verdict in favour of the plaintiff.