# The City of Philadelphia *versus* Miller.

*Tax sale of unseated land in name of unknown person and without description or means of identity, invalid.—Right of owner to redeem after five years, when bought by commissioners.*

1. An assessment of a certain number of acres of land, without any other description or means of identity, in the name of a person unknown in connection with any title or possession of the land, will not support a sale of the land as unseated for taxes.

2. Hence an assessment in the name of John Trembel (the warrantee name being James Trembel), cannot be resorted to as evidence to make title under a subsequent assessment in the name of John Turnbull, there being no other circumstance of identity.

3. When unseated lands on sale for taxes are bought by the county commissioners, the owner may with their consent redeem them, after the lapse of the five years from such purchase.

ERROR to the Common Pleas of *Schuylkill county*.

This was an action of ejectment by Sarah A. Cochran against the City of Philadelphia, for a tract of land, partly in Mahanoy and partly in Butler townships, containing four hundred acres. Prior to the trial, Daniel Miller, grantee of plaintiff, was substituted as plaintiff.

The plaintiff claimed the land under a treasurer's sale to the

commissioners of the county. The defendant, under the will of Stephen Girard, claimed to be the owner of a body of lands composed of eight tracts in the warrantee names of Samuel .Scott, Thomas Grant, John Brady, William P. Brady, Joseph Paschall, Thomas Paschall, Nathan Beach, and John Blackey, all surveyed on the 3d, 4th, and 5th of March 1794, on warrants dated 10th January 1794. The James Trembel lies upon the Samuel Scott, John Brady, Thomas Grant, and William P. Brady tracts. In addition to the Trembel and other surveys of same date, the following surveys, older than the city tracts, are located upon them, viz.: the Mertz and Flower, Richard Stephens, and Peter Yoh. The line dividing Mahanoy, formerly Rush township, from Butler, formerly Barry township, runs through the Trembel survey. The eight tracts belonging to the city contain three thousand two hundred and seventy-two acres, of which five hundred and thirty-six acres are in Butler township. The Mertz and Flower tracts cover six hundred acres of the city lands in Mahanoy township; and the Peter Yoh covers three hundred and ten acres in the same township. The Richard Stephens tract covers two hundred and seventy acres of the city land, of which one hundred and fifty are in Mahanoy and one hundred and twenty acres in Butler. North of, and exclusive of the Mertz and Flower and Stephens' interferences, there are seventeen hundred and sixty acres of the city lands in Mahanoy, formerly Rush, and four hundred and sixteen acres in Butler, formerly Barry. Mahanoy township was formed out of part of Rush in 1849, and Butler was formed out of part of Barry in 1848.

The land, as claimed by the plaintiff, was surveyed June 9th 1794, on a warrant dated February 11th 1784, in the name of "James Trembel," and contained five hundred acres and allowance.

The plaintiff, after giving in evidence the warrant and survey above mentioned, proved an assessment in 1826 of four hundred acres of "unimproved land in the name of John Trembel."

In the transcript of that year, in a handwriting different from that in which the original assessment was written, four hundred and one acres were assessed to "John Turnbull," and in this form it was continued in the assessment from 1827 to 1831.

In 1832 it was sold at treasurer's sale to the commissioners of Schuylkill county for unpaid taxes for the years 1829, 1830, and 1831..

John Schall, the treasurer, made a deed to the commissioners, dated the 14th June 1832, for a tract of four hundred acres then in Rush township, sold as the property of John Turnbull. This tract, which was sold as the property of John Turnbull, was held by the commissioners until 16th July 1849, when the commissioners sold to Sarah A. Cochran, and conveyed the same by

[City of Philadelphia *v.* Miller.]

deed, dated 13th August 1849. Sarah A. Cochran, by deed dated April 11th 1862, conveyed the same to Joseph Henry; and Joseph Henry and wife, by deed dated 1st May 1862, conveyed the same to Daniel Miller, who obtained a patent for the land from the Commonwealth, dated 23d September 1862.

It was contended by the plaintiff that the James Trembel tract was assessed in the name of John Trembel on the original assessment for 1826, by mistaking John for James by the assessor, and by mistake of Jacob Hammer, clerk, who transcribed the assessment for that year ; that Trembel was made to read " Turnbull," and the assessments were continued down in that name to the treasurer's sale in 1832.   The plaintiff based this conclusion upon the facts that the James Trembel warrant is the only one by the name of Trembel in the township of Rush, in which it was at the time these assesssments were made; and that there was no other tract, known or called by the name of " Turnbull." Nor was it shown that any person by that name owned land in that township at that time.

The defendants contended that the plaintiff had not identified the tract sold as the Turnbull tract as being the same tract named in the James Trembel warrant and survey.

The defendants further contended that the James Trembel warrant and survey was located upon older warrants in the names of Thomas Grant, Samuel Scott, John Brady, and William P. Brady, four tracts which were warranted on 10th January 1794, and which, by sundry mesne conveyances, became vested in the city of Philadelphia.

Defendants also contended that the taxes for the years for which the Turnbull tract was sold were paid, if Trembel was assessed in the name of Turnbull, and hence the plaintiff has no title to this land (even if the jury should find the James Trembel warrant to have been assessed in the name of John Turnbull and sold).

The county of Schuylkill was formed from a part of Berks county in the year 1811.   From that time until the re-arrangement of the townships, 20th July 1824, this land embraced in the James Trembel warrant and survey was in Schuylkill township.   When the townships were rearranged in 1824, this portion embracing the Trembel survey was attached to Rush township. Barry township was erected 1st August 1821.   The line which formed the township line between Rush and Barry was through this James Trembel survey, cutting a little more than half in Barry township.   Subsequently, Butler and Mahanoy townships were erected, and the present line between Mahanoy and Butler is the same as the line originally dividing Rush and Barry.

The defendants showed title from the Commonwealth to the eight tracts of land above mentioned, each containing about four

[City of Philadelphia *v.* Miller.]

hundred acres and six per cent. allowance, which, by sundry mesne conveyances, became vested in them. These lands lay in one body; and to show that the taxes were paid on the tracts with which the James Trembel interfere, defendants produced the following assessments:—

*Triennial Assessment for Rush Township.* 1829.

Seated List.

John Schall,
　　800 acres, at $1,　　·　　·　　·　　·　　val. $800 .
　　1 saw-mill,　　·　　·　　·　　·　　·　　　　　　15

The same is contained in the transcript for 1829, with the tax, $2.45, and marginal entry, Rhoads & Boone.

In the assessments, 1830, Rush township seated list, the same is assessed to Rhoads & Boone, late John Schall, as follows:—

　　800 acres and saw-mill, $815.　　Tax $2.40.

The same assessment was made for 1831.

In the seated list for 1829, the return for Rush township has Schall, John, Rhoads & Boone; tax, $2.45.　Marked in margin "sold." There was no other returns for John Schall for 1829, 1830, or 1831.

The treasurer's sales book for 1832 showed a sale of twenty-three hundred acres unseated, Rush township, in the name of John Schall, now Rhoads & Boone; tax, $6.72, to George Rahn. This was redeemed by the city of Philadelphia, April 17th 1834. This sale was made for road-tax against Schall.

The defendants contended that the land assessed and taxed for the years 1828 and 1829 as eight hundred acres in the name of "John Schall," and subsequently Rhoads & Boone, for which taxes the treasurer sold in 1832 to George Rahn, and which, redeemed in 1834 by the defendants, was the whole of those eight tracts of land lying within the township of Rush and claimed by the defendants.

The plaintiff, upon the other hand, insisted that the eight hundred acres assessed in the name of Schall, and subsequently Rhoads & Boone, was for the land known as the Flower and Mertz tracts; two tracts located over a portion of some of the eight tracts claimed by defendants within Rush township.

It was admitted that the assessment to Foust, William Heister, and Boone was for the Flower and Mertz tracts of eight hundred acres.

It was also in evidence that in 1817, Hezekiah Boone, by deed dated 25th September, conveyed these eight tracts to George Heisler and John Schall.

By an assignment, dated 29th November 1817, George Heisler

[City of Philadelphia *v.* Miller.]

conveyed his interest in these eight tracts to John Potts. In 1821, Hezekiah Boone brought ejectment for this land, and obtained judgment against Schall and Potts.

On 19th December 1828, Boone's executors conveyed one-half of these tracts to Schall, in pursuance of an agreement dated 21st March 1820.

On 19th December 1828, Boone's executors conveyed the Joseph Paschall to John Schall.

January 22d 1829, John Schall conveyed an undivided half interest of six of these tracts to Daniel J. Rhoads.

The assessments in evidence for Schuylkill township, 1820, showed,

Mertz, Conrad, for Sebastian Foust (under head of non-residents), 400 acres Mt. L., at $1, . . . val. $400
Hower, George, for Sebastian Foust, 400 acres Mt. L., at $1, . . . . . . . val. $400

The valuation of the Mertz and Hower being thus added together, making valuation $800 ; tax, $2.

These assessments were claimed by plaintiff upon the Flower and Mertz tracts.

In 1821 there was the same assessment. These two tracts were sold in 1822, at treasurer's sale, to John Schall. In 1822 and 1823 these tracts were assessed, as the Mertz and Flower, for Sebastain Foust, eight hundred acres. In the year 1824, the assessment was in the same way, with the words, "now John Schall" written on the margin. In 1825, same as 1824, with two crosses on the margin, interpreted by the counsel as meaning "transferred." On 20th August 1824, the territory embracing these tracts was attached to Rush township.

In the assessments for Schuylkill township seated list for 1818, Schall and Potts were assessed for forty-five hundred acres. Assessments for 1819 not found. In 1820 John Schall was assessed with thirty-two hundred acres. On the margin was marked "error."

In the transcript for same year : Schall and Potts, twenty-four hundred acres, Mt. L. The same assessment for 1821 and 1822.

Triennial assessment, 1823, seated list : Schall, John, and Potts, eight hundred acres. Same for 1824 and 1825.

In the margin of assessment for 1825 there was a stroke. The form of assessment does not appear in the assessments after 1825.

In the triennial assessment for Rush township, 1826, John Schall was assessed with eight hundred acres unimproved land. This continued down to and including the year 1828. The assessment from 1829 to 1831, inclusive, was the same as before.

In triennial assessment for 1832, Rhoads and Boone are left out, and Debbingport for Emmerich, George :—

[City of Philadelphia *v.* Miller.]

| | | |
|---|---|---|
| 800 acres, at $3.00, | . . . . | $24.00 |
| 1 yoke oxen | . . . . . | 20 |
| 1 saw-mill | . . . . . | 20 |
| 1 cow | . . . . . | 6 |
| | | $24.46 |

It was claimed by the plaintiff that the assessment in 1832 was in pursuance of a transfer by Schall to Porter and Emmerich, on 5th April 1830, for the Flower and Mertz warrants, and identifies the assessments in the name of Schall, subsequently Rhoads & Boone, late John Schall, as for the Flower and Mertz, and not upon the eight tracts and parts of tracts within Rush township.

The defendants averred that the assessments were upon the whole of the eight tracts in Rush township claimed by them, and not upon the Flower and Mertz alone.

The main, if not the only important question in the cause, was whether assessment and sale of the land in the name of John Turnbull applied to the land surveyed on the warrant in the name of "James Trembel."

Under the ruling of the court, which *inter alia* left the question of identity to the jury, there was a verdict and judgment for plaintiff.

This writ was thereupon sued out by the defendants.

The errors assigned were as follows :—

1. In admitting in evidence the entry in the assessment books of Rush township for the year 1826, of assessment of "John Trembel," offered by plaintiff.

2. In admitting in evidence the assessment in Rush township for 1826, 1827, and 1828, of warrant in the name of John Turnbull, four hundred and one acres of land, in connection with the assessments for the years 1829, 1830, and 1831, to show by the assessments that the name of James Trembel was changed by the commissioner's clerk, in transcribing the same, to John Turnbull, and continued in that name to 1832, but without any change in the number of acres; and that during the years when said warrant was assessed in the name of John Turnbull, the name of James Trembel does not appear in the assessment, which was offered for the purpose of showing that the land assessed is the warrant in dispute.

3. In admitting in evidence, as offered by the plaintiff, the assessment and transcripts for the years 1827, 1828, 1829, 1830, and 1831, in Rush township.

4. In admitting in evidence the following entry in the sale-book of the treasurer for 1832 :—

[City of Philadelphia *v.* Miller.]

Sale-Book of Treasurer for 1832.

Rush Township.

400 acres.    Turnbull, John.    $65 tax due.
Sold to Commissioners for $4.28.

5. In admitting the testimony of Samuel Lewis to show that he has been a surveyor in Schuylkill county for thirty years; that he has surveyed for many years in the old township of Rush, and was acquainted with the original boundaries of said township; that he is acquainted with the lands in said township and warrants lying upon them; that he has never known but one warrant and survey in said township in the name of Trembel, and that is the one spoken of by him in his evidence in this case, and he does not know and never knew of any warrant or survey in the name of John Turnbull in said township, which was offered for the purpose of showing the identity of the tract sold for taxes.

6. In rejecting the following entry in the minute-book of the county commissioners of date of February 29th 1840 :—

"At a special meeting of the Board of Commissioners, present, Edward Connor and George Seitzinger (Benjamin Pott had notice and was requested to attend, but not present), the mayor, aldermen, and citizens of Philadelphia being desirous of paying the taxes due on the unseated lands belonging to the said corporation in Schuylkill county, and which were late the property of Stephen Girard, and it appearing that some portion of the lands are situated in Columbia county, and are taxed there; and it also appearing from the records that some of the lands have been sold twice, if not three times, on the same day for the same tax : Therefore,

"*Resolved*, that the county treasurer be authorized to receive of the mayor, aldermen, and citizens of Philadelphia the sum of one thousand three hundred and twenty-two dollars and forty-four cents, in full, for all taxes, costs, and interest required to redeem the said lands, and to pay all taxes assessed and now demandable thereon, and that on payment thereof the commissioners will reconvey the lands purchased in for the county to said corporation."

To be followed by proof that, on March 7th 1840, the said sum of $1322.44 was paid by the mayor, aldermen, and citizens of Philadelphia to the treasurer of Schuylkill county, agreeably to said resolution, which was offered for the purpose of showing a redemption of the land covered by the James Trembel tract, claimed by plaintiff under sale of John Turnbull, which, in 1840, was still in the hands of the commissioners.

7. In rejecting the following offer of defendants :—

" Defendants offer a minute in the minute-book of the commis-

[City of Philadelphia *v.* Miller.]

sioners of Schuylkill county, dated February 29th 1840, and a cash entry in the treasurer's book, dated March 7th 1840 [being the same entries referred to in the preceding offer], to show that on the records which by law the officers of the county were obliged to keep of the sale of lands for non-payment of taxes, and the redemption thereof, there was notice to those under whom the plaintiffs claim that the city of Philadelphia was seised of their original estate by their original title in all lands in Schuylkill county, which had been or might have been sold for taxes prior to that date, and a title to which was vested in the commissioners under such sale or sales and remaining in them up to the date of said entries."

. 8. In admitting in evidence a deed, dated 12th February 1841, from Joseph Mitchell and wife to Sarah A. Cochran, for the undivided moiety of nine hundred acres contained in the defendants' deed given in evidence by the plaintiff; consideration $2060; recorded in deed-book 55, p. 263, 2d February 1858; to be followed up by evidence of notice to the defendants at the time of the execution of the deed from Mitchell and Slack to the defendants, that Mitchell had conveyed one-half of the tract to Sarah A. Cochran, and that the deed from Mitchell to Slack was without consideration, never delivered to Slack, and was in trust for Mitchell, for the purpose of rebutting the evidence of the defendants to one-half of so much of the nine hundred acres as lies upon the Trembel survey.

10. In charging the jury as follows:—

"But the land being assessed as nine hundred acres in Barry township, without further description, defendants cannot claim that this was for lands in Rush township, or that any portion was in Rush. The township is descriptive of the land. It is unlike land assessed in name of warrantee giving number of acres.

"The defendant, through its authorized agents, purchasing land, have constructive notice of any knowledge gained by such agent in the course of the same transaction. Did Meredith, the agent for the city, have notice before he purchased from Mitchell and Slack, that Slack was not a bonâ fide purchaser from Mitchell and for a valuable consideration, but, upon the other hand, that Mitchell had but the title in Slack's name without consideration, and Slack was not a purchaser from Mitchell nor vendor of the defendants, and that there was an outstanding title in Sarah A. Cochran to one undivided half of this land before Mitchell's deed to Slack? If Meredith had such notice, the title of Sarah A. Cochran would not be affected by the deed of Slack. If not, the title of Sarah A. Cochran is void as against the defendants. Was there such notice? That depends upon the evidence of Slack and Hoff, and the other evidence in the case."

The answers given by the court below to certain points which

[City of Philadelphia *v.* Miller.]

had been submitted by the parties, and which were in accordance with the other ruling of the court on the questions of evidence, and the charge as above given, were also assigned for error.

All the assignments of error were included in the two questions argued and considered in this court, viz. :—

1st. That all the evidence offered by the plaintiff should have been rejected either as irrelevant or incompetent; or,

2d. That having been admitted, the court should have instructed the jury that it was insufficient to identify the tract sold in the name of John Turnbull with the James Trembel survey.

*Franklin B. Gowen, David W. Sellers, F. Carroll Brewster,* and *John Bannan,* for plaintiff in error.

*Jacob Hoffman, E. Greenough Scott,* and *John W. Ryan,* for defendant in error.

The opinion of the court was delivered by

AGNEW, J.—There are but two questions in this case which need to be noticed.

1. Whether an assessment of a certain number of acres of land, without any other description or means of identification, in the name of a person unknown, in connection with any title or possession of the land, will support a sale of the land as unseated for taxes.

2. Whether the evidence of the redemption ought not to have been received.

The tract in question was warranted in the name of James Trembel, and surveyed as four hundred and one acres and fifty-seven perches. The assessment was "John Turnbull, four hundred acres." Granting that the land itself is the subject of taxation, it is still on the ground of title. This is proved by the fact that no sale is valid till title be shown to be out of the Commonwealth, and by the mode of assessing the tax and giving notice of the sale, which always furnishes the name of the supposed owner. Ownership, whether named correctly or incorrectly, is the subject of the duty to the state to bear a proportion of the public burdens. Land is taxed, not as inanimate matter, which is insensate, and cannot respond to duty, but as property, to whose owner the law allows both time and place to respond, before his property shall be sold from him, and after a sale still affords the grace of redemption. But how can the duty be here proved, or the redemption be claimed, without a knowledge that the ownership has been subjected to the former, and a sale made demanding of him the latter? Notice, or at least the means of

[City of Philadelphia *v.* Miller.]

knowledge, is an essential element of every just proceeding which affects rights of persons or property. But how can the duty of the payment of taxes be performed without the identity of the subject-matter of the duty being made known to him who is to perform it, by name or by description? A thing, whether land or chattel, to be the subject of legal action, must be proceeded against by name or by description, but a name is descriptive only because it has become associated with the person or thing named. A name, therefore, which has never become connected in any manner with any title or possession of land, clearly infers no means of its identification. So the mathematical content expressed in figures is not a mark of identity peculiar to the land; but like a common noun, has no immediate or cognate relation to a particular tract. This is especially true where the quantity of all warrants almost invariably was four hundred acres. Identity is said to be matter for a jury. Certainly this is so; but from its very nature the fact of identity is dependent on circumstances which attach themselves to the land. It is because the thing described answers to the circumstances of description we are able to identify it. The evidence of identity is the record which contains the description and fixes the duty. Assessment is, from its legal requirement, and the necessity of preserving its evidence, a written entry, and must depend upon the records of the commissioner's office, and not upon parol testimony, or the private duplicate of the assessor. McCall *v.* Lorimer, 4 Watts 351, 355, is full on this point. And, as said by Justice Rogers, in another report of that case, 4 W. & S. 133, it is the assessment which confers the power to sell, in the same manner as a judgment on which an execution is issued. It is the assessment, therefore, which must contain the means of identification of the ownership, in order that the proprietor may pay his tax, or redeem if he fails to pay in time. It may be by a name, though it need not be, as the sale will be valid under the ·Act of 1803, though the land be not taxed and sold in the name of the real owner. But if by a name alone, it must be by one linked to it, or once associated with it, so that the chain which binds them together, when followed by the hand of the real owner, will lead him to it. If the owner be unknown, still it can be identified. It has some ear-mark; it lies somewhere, and adjoins somebody, and has some title associated with it, good or bad; something which will afford the owner the means of tracing his land, and paying his tax.

It is said, however, that every owner knows his land is taxed, and it is his duty to seek the officer, and offer to pay the tax, and this offer will stand as his excuse, and save his title. The answer is, that in the case which we are considering, where nothing exists in the assessment to lead to identification, it is useless and

[City of Philadelphia *v.* Miller.]

unjust. Useless, because the officer no more than himself can trace his property, or enable him to perform his duty by accept- ing his taxes. It is unjust, because the sale of the land thus becomes inevitable, and necessitates the payment of expenses and inconvenience in defending or recovering his title; and in order to preserve it compels him to perpetuate the evidence of an offer seemingly useless; for what person, told by the officer that he has no land assessed, would deem it necessary to preserve the evidence of an offer which bears no fruit? It is unjust also to the purchaser at the sale, for he is induced to bid for a worth- less title, to be blown away by the breath of an oral offer, bear- ing no imprint on the public record, and if the officer should make a record of what the law makes no provision for, how can the purchaser know of a connection between the person who makes the offer and the land exposed to sale, which neither the owner nor the officer was able to trace? It is surely enough that a man's property may be assessed and sold in the name of another, but it is absolutely shocking to every sentiment of natural jus- tice that any man's property should be forfeited without any description whatever, or means of knowing that his rights are in peril. .

What is it to tell us, let the owner be vigilant and prompt, let him have his land duly assessed, and pay his share of the public burdens? Admitting the truthfulness of these legal injunctions, in their general application to duty, we cannot ignore the tenden- cies of the law, and the general habits and customs of the people, and the harshness of this rigid application to the present ques- tion. The assessment of taxes belongs to the public agents, and therefore is always left to their guidance, under an expectation, not often disappointed, that they will act faithfully and fairly. Notice to the tax-payer as a duty is cast by the law upon them, and opportunity for correcting errors afforded. Owners of unseated lands are for the most part non-residents, far away from their property. Under these circumstances, to erect the high standard of diligence thus set up for us, where the penalty of its non-observance is so greatly disproportioned, as is the loss of a man's whole estate to the pittance of tax imposed upon it, is to exact a duty most onerous, and higher than the law itself has given us. The penalty of the law for a failure to make a return of land for taxation is fourfold taxation, but not confisca- tion of estate. We should not be wiser than the law. It has made ample provision for notice to the owner; first by providing a description of the land, and a book wherein it may be found, and imposed on the county surveyor the duty of furnishing the means of making it. It has then provided for notice to him at least sixty days before the sale, specifying the township in which his land lies, the number of acres in the tract, and the name of

[City of Philadelphia *v.* Miller.]

the warrantee or owner, and recognised his residence by requiring publication in a daily paper of Philadelphia, as well as in a newspaper of the proper county. It thus sedulously guards the interest of the owner, and while it looks to the land itself as the subject of taxation and the means of payment, it carefully regards him as the object of duty and possessor of rights.

That the law itself designed identification is clearly proved by the returns it provided for. The county surveyor is required to make a correct return of all lands surveyed, including the number of acres in such survey or warrant, the names and surnames of the original warrantees, the waters on which the same are situate, the land contiguous thereto, and the township in which it lies. The owner is required, within a year of his purchase, under the penalty of fourfold taxation, to furnish a statement containing a description of the tract, the name of the person holding the original title, and its nature, number, and date, and the name of the grantor, and date of the conveyance to the person retaining the statement. Identification of the land itself being the main purpose, the provision allowing the owner a year to make his return answers the argument that by the terms of law the sale is valid, though the land is not assessed and sold in the name of the owner. Having a year to return his ownership, and the assessment continuing in the former name, it was requiring of him the least possible diligence to examine for taxes in the names of those under whom he claims title. But it does not follow from this that his land should be sold without any means of identification to enable him to perform his duty. There was another reason for the provision. Land is often claimed by adverse owners, and it is not the duty of the tax officers to decide between them. It is sufficient, therefore, if the assessment be in the name of one connected by some title with the land. There is no hardship in this, for owners seldom are ignorant of adverse titles. Ten minutes will suffice to read over every name in the longest list of unseated lands in any township, and if the name of the hostile claimant be found in connection with his tract the means of identification is at hand. There are many reasons why an error in name should not invalidate, but not one why an assessment, having no known connection with the true subject of the sale, should condemn the title.

So the sale is good, though the officer fails to give the notice required by law. But the law has provided its antidote by giving the owner two years to examine the office, and to redeem. If he have received no notice of sale, it required of him no great measure of diligence to look after his interests within two years. But if, when he comes to inquire, he is unable to find upon the books any trace of his land, he certainly can complain of injustice, after he discovers that his property has been sold from him without

[City of Philadelphia *v.* Miller.]

any means of knowledge or redemption.   In short, it seems to me, from a review of the law, and the nature and justice of the thing, it is essential to the validity of the sale that the assessment should afford the means of identification, either by a description of the land, or by some circumstance, number, or adjoiner associated or connected with it, or by a name connected at some time with a title to the land, good or bad, and that a sale without description, circumstance, or name, having any known relation to the land, is bad.

This position is sustained by the authorities when properly examined.   There are many dicta in general terms, some of which are seemingly in conflict, but it will be found that in all the cases the assessment contained the elements of identity, while the case before us, as far as I have discovered, presents for the first time the naked question, with the single exception of Dunn *v.* Ralyea, in 6 W. & S. 475.

In Stewart *v.* Shoenfeldt, 13 S. & R. 360, the question was whether an assessment in a wrong township was void?   But it was held there must be other circumstances of description sufficient to identify the land.   Here the tract was taxed in the name of George Sevitz, the warrantee, and as containing the precise quantity of the Sevitz survey, four hundred and twenty-five acres and sixty-nine perches.   In Luffborough *v.* Parker, 16 S. & R. 351, the assessment was in the true name of the owner, Nathan Luffborough; and Huston, J., in Morton *v.* Harris, 9 Watts 325, referring to Luffborough *v.* Parker, informs us that it was a donation tract, having a number by law, and was taxed and sold in the right number.   In Hubley *v.* Keyser, 2 Penna. 496, the question arose upon the regularity of the assessment, and the land was the subject of conflicting titles, but the assessment was in the name of John Hubley, the warrantee.   And in Morton *v.* Harris, 9 Watts 323, 324, Justice Huston also corrects the generality of his expressions in Hubley *v.* Keyser, and on page 325 takes occasion to say: "I apprehend the tract taken and sold must in some way be designated, so that it can be known to a reasonable certainty what specific tract was taxed and sold."   I notice Huston *v.* Morton, 1 Watts 477, only to say it was a case where the defendant was a mere trespasser, Gibson, C. J., remarking: "So that in an action between the vendee of the county and a wrongdoer, every intendment is to be made in support of the sale."   Strauch *v.* Shoemaker, 1 W. & S. 166, was a case of conflict of title to the same tract, where the owner of the senior warrant was postponed by a failure to return his warrant in due time, and the assessment was in the name of Henry Strauch, who had been an owner of the senior warrant, and therefore directly connected with one of the hostile titles.

Burns *v.* Lyon, 4 Watts 363, is free of difficulty.   The land

[City of Philadelphia v. Miller.]

was there assessed as part of James Dowling's tract of two hundred acres, and part of tract settled by James Dowling, two hundred acres.  The point decided was that this was a sufficient designation of two hundred acres as a part of a tract of four hundred acres settled by James Dowling.  In Harper v. McKeehan, 3 W. & S. 238, the assessment of a tract of land warranted and surveyed to John Logue, was made in the name of Matthew Irvine, to whom it had been conveyed by John Logue.  The whole opinion of Huston, J., warrants the syllabus of the case, that it is "not essential to the validity of a treasurer's sale of unseated land; that it was not assessed and sold in the name of the true owner, if it be clearly designated by any other mark." McCoy v. Michew, 7 W. & S. 386, decides nothing more than that land may be taken and sold in the name of a junior warrantee of the same land.

Justice Burnside's remark, in Collins v. Barclay, 7 Barr 67, that "it is the identical spot of ground assessed that passes without regard to the real name or title used in the assessment," is founded upon a case where the assessment was in the name of Samuel Bethel, the warrantee.  In Russell v. Wentz, 12 Harris 337, Judge Hegins says that it is not necessary that the land should be so distinguished in the assessment as to lead the owner to the assessment.  Woodward, J., says: "That it is immaterial in what name the land is assessed, if there is sufficient evidence to satisfy the jury what land was taxed and sold."  This did not affirm the doctrine of Judge Hegins, for the assessments were in the name of Samuel D. Franks, owner of the two warrants, and the question was, whether they applied to this pair, or to another pair owned by him in the same township.  Samuel D. Franks had notice, therefore that he was assessed for one pair or the other; and this case so much rested on is no decision of the question now before us, while the remarks of Justice Woodward, coupled with the facts, were strictly correct.  In the same book we come to Laird v. Heister, p. 453, in which Justice Lowrie laid down, in a series of propositions to the number of nine, the whole law pertaining to the assessment of unseated lands, very useful indeed as a birds-eye view of the subject, but constituting no precedent for judicial decision.  The fourth of the series is, that the tax-books are not intended to give notice of the liability of land for taxes.  This if it mean that there need be no designation in the assessment to identify the subject of the tax, is counter to the plain provisions of the law for its description, and for notice to the owner, and to the general current of authority, and was not called for by the case.  The plaintiff claimed under an appraisement in the name of John Kunkle, the warrantee, and the defendant claimed title under the same warrant, but alleged there was another tract known as John Kunkle's, to which the assessment

applied. In either case the assessment put the owner of the John Kunkle tract on his guard.

Miller *v.* Hale, 2 Casey 432, has no possible bearing on the question before us. The assessment was in the name of Philip Darr, the warrantee, but the deed by mistake referred to the name of William Darr, and evidence was given to show the identity of the tract sold with that assessed. The law was well summed up by the present chief justice: "The name of the warrantee and of the township are circumstances of designation, but not conclusive. The identity of the tract assessed must be fixed to the satisfaction of the jury, if by the warrantee and township, very well; if by other circumstances of designation, equally well.".

These are all the cases in which I have discovered general expressions seeming to militate against the position now assumed. Let us examine others which look in the other direction. In Cooper *v.* Brockway, 8 Watts 165, Justice Huston, referring to the provision that a sale shall be good though the land be not assessed and sold in the name of the owner, says: "If the tract is precisely designated, as in this case, by the name of the warrantee and number of his warrant, the sale is good and effectual. Morton *v.* Harris, 9 Watts 323–5, has been already referred to for the expression of the same judge, as to designation being necessary, so that it can be known with reasonable certainty what tract is taxed and sold.

But in Dunn *v.* Ralyea, 6 W. & S. 475, the question was squarely met and decided. To understand its force it must be premised that the tract was donation land, required to be numbered on a tree nearest to the north-west corner, and that the 12th section of the Act of 1785 required a general draft to be made, in which the number should be inserted, "to serve to all intents and purposes in lieu of recording the patents;" the name and rank of the person when drawn being inserted within the lot he draws. The plaintiff claimed title to lot No. 1031 under the patent, and the defendant claimed title to lot No. 1029, and the case was decided upon a special verdict, which expressly found that No. 1031 was the land in controversy, and was assessed as No. 1029, for the years 1816 and 1817; that in the commissioner's office there was a certified draft of the fifth donation district, at the time and had been since 1804, which represented the tract in dispute as numbered 1029, from which the commissioners made their assessments; that the tract in dispute was taxed in the name of Jacob Harrington, who had received a treasurer's deed for it, causing a change in the assessment from John Pearson to Jacob Harrington. That two of the supervisors laid the road-tax of 1816 on the land in controversy; that it was sold as 1029 for the taxes of 1816 and 1817. The special verdict further

[City of Philadelphia v. Miller.]

found that the real number 1029 is on the ground located two tracts north of the tract in dispute, and had been seated since 1814. Thus nothing could be more clearly ascertained. No. 1031, the tract in dispute, was the very tract assessed and sold; it appeared as 1029 on the general draft, and not as 1031, and had been before sold to Harrington, and therefore taxed in his name. The identity of the land in dispute, No. 1031, with the subject of assessment and sale is placed beyond doubt; and this court, distinctly and without dissent, decided that the sale was invalid, because the only description was the number, 1029, and the owner could not by that number discover that his land was taxed. The case is put not on any peculiar efficiency in the number, but on the ground expressly that the designation was not such as to enable the owner to pay his tax; "for on inquiry" (says Kennedy, J.), "whether any assessment had been made on No. 1031, he must have received a negative answer, and he had no occasion to inquire further."

In the same book we find Thompson v. Fisher, p. 520, in which Justice Huston, after deciding that an assessment in the name of John Halaman for John Hadleman, the warrantee, is sufficient, says : "Let it not be understood that I mean that any tract may be sold in any name, if the name be mistaken so as not to be liable to be considered the same, there must be some other evidence to designate the tract or it will not pass." In Dunder v. Snodgrass, 6 Harris 151, the land was taxed in a wrong number, and in the name of William Powers, a former owner through whom the defendant claimed; no change having been made in the assessment. In the Common Pleas, Church, J., held that the number being arbitrary, "any other description will be sufficient, provided it evinces the fact of the actual assessment of the land, or leads to evidence of it." In this court the judgment was affirmed, saying: "The number of the tract was an artificial mark set on it for convenience of designation; but it might be designated by any other." "There was enough in this instance to lead him to the truth, and it is sufficient that the description did not positively mislead him."

The last case decided is Woodside v. Wilson, 8 Casey 52. In the assessment the number was wrong, but the name of E. Rockwell, a former owner, was used. The court below held that "marks and surveys are not the exclusive and only indices by which the land may be designated," and "that it is not essentially necessary that a donation tract should be assessed by its distributive number, provided it has other names or means by which it may be known." This language is quoted and approved by Justice Thompson, in delivering the opinion of this court.

The result of the whole is, that where the assessment wholly

[City of Philadelphia *v.* Miller.]

fails to lead to identification, so that neither the owner nor the officer can tell that his land is taxed, the duty of payment cannot be performed, and the assessment is void.

The assessment, therefore, upon which the sale was made being the true source of identification, and the criterion by which the validity of the sale is to be tested, it follows that an assessment several years before in the name of John Trembel (the warrantee name being *James* Trembel), which by some mistake was turned to John Turnbull, cannot be resorted to as evidence to make title under a subsequent assessment in the name of *John Turnbull*, there being no other circumstance of identity. The court below erred in holding the evidence sufficient to give validity to the assessment under which the sale was made.

We think the court also erred in refusing to receive the evidence of the redemption made by the city of Philadelphia.

It has been too firmly decided to be unsettled that there may be a permissive redemption after the five years from the purchase by the county commissioners: Stiner *v.* Coxe, 4 Barr 26; Coxe *v.* Wolcott *et al.*, 3 Casey 158; Diamond Coal Co. *v.* Fisher, 7 Harris 267.

And the fact that the defendants offered first the evidence to show the fact of redemption, before producing the conveyances from the commissioners to the city of Philadelphia, was not a reason for rejecting the evidence. In the very nature of the case the consent of the commissioners to the redemption and the payment of the redemption price must precede the conveyance, and it could not be required that the whole should be offered together, but rather that it should go in step by step. If the redemption was agreed upon, and the money paid on the faith of it, and the commissioners also were in fault, it would be difficult to say, if no opposing circumstances existed, that the title had not revested in equity, in the city.

The judgment is reversed, and a *venire de novo* awarded.

Woodward, C. J., concurred in reversing the judgment for the rejection of the evidence of redemption offered by the city, but he did not concur in reversing it on the first ground discussed in the above opinion.

Strong, J., was absent at Nisi Prius.