## Greeley and Bemis *versus* Thomas.

1. Donation surveys are always known and identified by their numbers.

2. A conveyance of a donation lot by its number imports an intention to convey the whole as standing on the record, unless the generality of the grant be restricted by plain and unequivocal terms of description.

3. It is not error for a judge to point out the connection and effect of the facts in a case; unless it be so done as to mislead or bind the jury.

4. A disclaimer by a defendant in ejectment, unless withdrawn or amended by leave of the court, operates as an estoppel by record of the part of the land disclaimed.

5. Smith *v.* Moore, 5 Rawle 348, and Dunn *v.* Raylea, 6 W. & S. 475, referred to as to donation surveys.

October 22d 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Erie county :* No. 39, to October and November Term 1867.

This was an action of ejectment, brought May 20th 1864, by Oliver Thomas against N. B. Greeley, Myron Wickwer and J. Bemis. In the writ the land was described as "50 acres of land, part of tract No. 2067, in the 10th Donation District." It was in three parcels, each of the three defendants claiming and being in possession of a distinct parcel. The plaintiff filed his claim of title or description of the land claimed by him.

Greeley and Wickwer pleaded " not guilty."

Bemis pleaded " not guilty" and also the following plea :—

" And for further plea in this behalf, he takes defence for and to the following described lot or piece of land, or so much thereof as is included in the plaintiff's writ, to wit : All that certain piece or parcel of land situated in Wayne township, bounded and described as follows, to wit : On the north by claim of Barnes Greeley and land deeded by John Reynolds to Ezra York ; on the east by land of York and land deeded by John Reynolds to O. F. King and D. Jackman ; on the south by Donation Lot No. 2101 ; and on the west by Donation Lot No. 2067, and containing 56 acres of land, more or less, and is part of Donation Lot No. 2100. Of the above-described piece of land the said defendant Bemis claims to be the exclusive owner, and any and all other land included in the plaintiff's writ, he, the said Bemis, disclaims having any title in or to, or the possession of the same or any part thereof, and takes defence for the land included in the above description, and claims no other, and this," &c.

Lot 2067 was patented to John French on the 26th of October 1786, by the following description :—

" Commencing at the north-west corner, thence east 261 perches to a linnwood, thence by lot 2100 south 130 perches to a beech ;

[Greeley *v.* Thomas.]

thence west 261 perches to a beech, and thence north to the place of beginning."

By sundry assurances the title to lot No. 2067 became vested in Grace Bennett, who on the 24th of April 1856, conveyed it to Sandford S. Bennett by the following description:—

" All that certain tract known as No. 2067, in the 10th Donation District, described according to a survey made by Wilson King, on the 29th of September 1843, as follows:—Beginning at a post—a corner of tract No. 2066 in the middle of a public road, thence along the middle of the said road by tract No. 2058, north 140 perches to a post, thence by tract No. 2068 N. 86° E. 340 perches to a post in the centre of another public road, thence by tract No. 2100, and along the centre of said road S. 9° 15′ E. 141 perches to a beech, and thence by tract No. 2066 S. 86° W. 363 perches to the place of beginning, containing 290 acres and 58 perches and allowance."

Sanford S. Bennett conveyed the easternmost half of the lot to Thomas, the plaintiff, the deed following the same description.

The other evidence necessary to an understanding of the case and the decision of the Supreme Court, will be found in the charge of the court below (Johnson, P. J.).

The plaintiff submitted these points:—

1. The deed of Grace Bennett conveys the entire tract of land to Sanford Bennett, under whom the plaintiff claims.

2. The deed is to be most strongly construed against the grantor, and no reservation being made, none can be inferred.

3. No question of title is at issue by the pleadings, and the chain of title filed and not denied by the defendants estops the defendants from denying the plaintiff's title to lot No. 2067.

The defendants submitted these points:—

1. The description of the land in the deed from Grace Bennett to Sanford S. Bennett, dated April 24th 1856, governs the rights of the plaintiff in this case; he cannot recover beyond the lines called for in said deed.

2. The plaintiff is confined to the courses and distances contained in the said deed from Grace Bennett to Sanford S. Bennett, as there are no landmarks designated in said deed other than a public road on the east of said tract.

3. The land described in said deed as bounded on the east by a public road, and thence along the centre of said road one hundred and fifty-one perches to a beech, limits the plaintiff's land to said road, and he cannot recover any land east of said road under the undisputed evidence in the case.

The court charged:—

" The controversy in this case resolves itself mainly into an inquiry where the north and east lines of donation tract are or ought to be.

' Originally, certainly one and perhaps neither of them was actually run. Most of the donation lands in this and adjoining counties were very badly surveyed, and in some districts the requisite work was not one half done.

" Evidently in this 10th Donation District the work was greatly slighted, not one-half the lines were actually run, and many of them with great carelessness and disregard of order and accuracy.

" The plaintiff claims to own the east part of lot No. 2067, embracing all the land in dispute. He claims nothing outside of this tract.

" The defendants claim nothing inside of it; but they say that even if the east line is where the plaintiff alleges it to be, he cannot recover any part of that portion lying east of the road, because he has shown no conveyance of it to himself.

" This complicates the case very much, and it is better that we dispose of this question first:

" Grace Bennett was the acknowledged owner of this tract. The plaintiff claims through a conveyance from her to Sanford S. Bennett, his grantor, dated April 24th 1856, which reads as as follows: * * * (As above given).

" The deed from Sanford S. Bennett to him, dated November 25th 1863, follows the same description.

" These deeds purport in general terms to convey all of tract No. 2067 without reservation, and as between the grantor and grantee and those claiming under the grantee would be construed to embrace the whole, notwithstanding any restrictions or discrepancies in the subsequent description of its boundaries, in obedience to that rule of law that requires doubtful grants or equivocal phrases to be construed most strongly against the grantor.

" But when the rights of a third party intervene, claiming adversely to the grant, then the instrument must receive a fair construction, such as the terms and language used will fairly warrant.

" Here, although there is a general description of the premises conveyed as tract No. 2067, clearly indicating the intention of the grantor to include the whole, yet there is added a further description of them by designated boundaries and courses and distances, which according to the plaintiff's theory is inconsistent with the real or proper boundary on the east.

" The rule for ascertaining the true boundary of the land conveyed, when there is doubt, incongruity or contradiction in the description given, is that the marks on the ground of a survey, actually made, shall prevail over any misdescriptions that may occur in the deed.

" If natural or artificial boundaries or landmarks previously

[Greeley *v.* Thomas.]

existing on the ground be referred to as boundaries, they shall also prevail over any subsequent description by courses and distances inconsistent with such permanent and visible monuments.

" In this case, not only are there courses and distances which do not correspond with the actual boundaries of the tract as claimed by the plaintiff, but a pre-existing visible artificial monument on the ground, is designated as the eastern boundary of the land conveyed, viz. a public or travelled highway.

" How or when the mistake, if it be one, originated does not appear. But that a lady, who was a stranger in the country, and saw the land but seldom, should have adopted the popular belief, is not surprising. Yet its adoption, so long as it hurt none, should not work a forfeiture of her land.

" As against an adverse claimant in possession, however, we think the plaintiff is estopped ι from claiming this boundary described in his deed, and spread upon the records.

" But here arises another question to complicate the case. *Mr. Bemis, one of the defendants, and the one owning the land adjoining this tract on the east, has filed and put on record his disclaimer of all or any part of tract No.* 2067, *without designating where its east or his west boundary is or ought to be. This is substantially a confession of judgment for any part of that tract that may not be within the limits of his occupancy. He refuses to take defence as to any portion of No.* 2067, *and is therefore estopped from controverting the construction which the plaintiff seeks to give to his deed as to the eastern boundary of the land conveyed.*

" As to him and the plaintiff, it is, therefore, the simple question as to where the line between the two tracts is.

" This leaves the owner of the Wickwer lot alone entitled to contest the plaintiff's right to extend his east line across the road named as the boundary in his conveyance. As to that we hold the plaintiff is limited to the west side of the road, the description of Mr. Bennett under which he claims not being such as to entitle him to recover against an adversary in actual possession.

" Now we come legitimately to the question of the actual boundary of tract No. 2067, on the north and east. On this subject you have the testimony of David Wilson, the surveyor and artist appointed by the court to make an examination on the ground, and report to us the result, with a draft or diagram showing the several claims and interferences of the parties. You have the fruits of his labor in a very intelligent and satisfactory form.

" There seems to be no difference of opinion as to the south and west lines and the south and west corners, and but little as to the south-east corner. Where then was the north line either actually run or intended so to be ? If not actually run, were there any designated points, corners or other lines, from or by

[*Greeley v. Thomas.*]

which the subsequent location of this line was to be governed? Of course, marked corners on the north and south lines, if such marks were made, would be the guides. If not made, then by the courses and distances called for in the return of survey or as near to that as the ground and unoccupied space will admit.

"Upon the supposition that the east and west lines of this block were not actually run, then we should inquire whether corners were marked on the outside or exterior lines for the several lots or subdivisions for the guidance of future surveyors in completing the surveys.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"[It is shown by Wilson King, an old, experienced surveyor, that about twenty-one years ago, a controversy having arisen as to the location of this line at a point east of this tract, the dispute was referred to him; that he, with other surveyors went upon the ground, and after diligent search discovered an original marked corner at the north-east corner of tract No. 2100—the one lying next east of this one. The line extended west from this corner, by the course at which these lines were run, locates this north line of this tract where the plaintiff claims it to be.]

"Is this location correct? [You have the evidence of Mr. King, as to the character of the corner he there found, and of the original line and corner east of it. He is positive and certain of this being a monument of the original survey. It is some corroboration of its correctness, that its location where he fixes it has been acquiesced in, as also of the line running east from it, ever since, by the surveyors and landholders, and that they now form the admitted boundary of the lands on each side.] One of the defendants, Mr. Greeley, claims and occupies up to the line running north from this corner as the original tract line.

"[Then, again, it receives a strong corroboration in the evidence of Judge Miles, who made a resurvey of several of these lots some forty-three years ago. He commenced at a known, marked and numbered corner west of this, viz., at/the north-west corner of No. 2041, two tracts west and one north of the one in dispute. He ran out the several lots according to the courses and distances called for in the original survey, finding the corners and cross-lines whenever he could, and marking them where he could not. Coming to the south line of No. 2068, being the north line of No. 2067, he ran that. In doing so he ran and marked a line on the same ground, that an extension of the line west from the Wilson King's beech corner would occupy; this was well known, and recognised for many years by the settlers, and among others by the defendant Greeley and those under whom he claims, as the correct line, commonly called the Miles line.]

"[It was marked by him, and there is no reason to doubt that

the line David Wilson found on the ground between these contestants, west of the road, was the same made by Miles forty-three years ago. If so, it shows almost an exact correspondence in that line, whether run from Miles's marked corner on the west, or King's beech corner on the east. Wilson started at the latter, and if he struck the Miles line, it is a pretty sure indication of where the division-line between No. 2067 and No. 2068 is, or ought to be.]

\*     \*     \*     .\*     \*     \*     \*     \*     \*.     \*

" Then as to the east line of the tract; the original survey and patent for No. 2067 calls for a linn or basswood tree at the north-east corner. This fact is evidence that this corner was originally marked by those who made donation survey. Where was this basswood corner? If it was in the line run by Judge Miles, or in the one extending west from the King corner, it could not be the one described by defendant's witnesses in or near the old road. Was it the one designated by plaintiff's witnesses in that line? This is about as much too far east as the other is too far south. This is the only marked tree of that kind ever found in the Miles and King line. Several witnesses testify to having seen the axe-marks on it. If this was the original north-east corner of No. 2067, then the east line of that tract would be considerably east of the old road, where the defendants claim it to be, and Bemis claims nothing west of it—neither does Greeley. If the bass-wood in the road said to have been marked, and alleged to be the north-east corner of this lot by the defendants, be the true original corner, then the plaintiff is not entitled to recover against any of the defendants. As you are satisfied by the evidence on this subject, so render your verdict.

" The rules as stated in our general charge, substantially answer the plaintiff's points in the affirmative, and the defendant's in the negative, so as to make further answer unnecessary."

The jury found " for the plaintiff against N. B. Greeley for all the land described in the writ lying west of the road, and against J. Bemis for that part claimed by him east of the public road, as designated on the draft of David Wilson, and for the defendants as to that portion east of the road marked on said map as the Wickwer lot or portion."

Greeley and Bemis took a writ of error.

They assigned for error:—

1, 2 and 3. The answers of the court to their points.

4. Those parts of the charge included in brackets.

5. That the court submitted to the jury, that they might find that the east line of tract No. 2067 was east of the public road, and in that event that the plaintiff was entitled to recover against Bemis, when there was no evidence of any such line having been run or marked on the ground.

6. That part of the charge in italics.

7. The construction given to Bemis's special plea.

8. Taking from the jury the *fact* as to the *location* of the land described in the plea.

9. The question that Bemis was estopped by his plea from claiming to the recorded line of the eastern boundary of tract No. 2067 *was not raised* by the counsel for the plaintiff, either in his points to the court or in his argument to the jury; therefore, it was error in the court to charge the jury upon a point not raised by counsel on either side.

10. In entering judgment against N. B. Greeley on the verdict, the verdict being void for uncertainty.

, *J. C. Marshall* and *J. H. Walker*, for plaintiffs in error, cited Parker *v.* Donaldson, 6 W. & S. 132; Nieman *v.* Ward, 1 Id. 68; Relf *v.* Rapp, 3 Id. 21; McRhea *v.* Plummer, 1 Binn. 230; Lambourn *v.* Hartswick, 13 S. & R. 121; Morris *v.* Travis, 7 Id. 222.

*G. W. De Camp*, for defendant in error.

The opinion of the court was delivered, October 31st 1867, by

AGNEW, J.—The 1st, 2d and 3d assignments of error may be considered together. The purpose of all these points was to confine the plaintiff to the road, mentioned in the deed from Grace Bennett to Sanford S. Bennett, as the eastern boundary of lot No. 2067. But this is evidently a mistaken part of the description, and is corrected by the other portions. The conveyance was for "*all* that *certain tract known* as No. 2067 in the 10th Donation District."

To those familiar with these surveys, this statement is a complete and adequate description of the entire survey of that lot. The controlling effect of the description by the numbers of the donation surveys, is set forth in Smith *v.* Moore, 5 Rawle 348, and Dunn *v.* Ralyea, 6 W. & S. 475. By the Act of 1785, the number of the lot was to be marked in Roman numerals upon the north-western corner tree, or if the corner be a post, upon the tree nearest to it within the lot. This number was then to be marked upon a general draft within the proper lot, and the draft deposited in the Rolls office as a public record, to serve to all intents and purposes in lieu of recording the patents.

After this the lot was drawn and appropriated by its number, and the name of the officer or soldier drawing it was directed to be written on the draft within the lot. The consequence of this regulation was, that these surveys were always known and identified by their numbers, and many hundreds of deeds, private and official, rest upon no other description. When, therefore, Grace

Bennett conveyed to Sandford S. Bennett all that certain tract
known as 2067 in the 10th Donation District, the terms clearly
imported an intention to convey the whole survey so numbered
and standing upon the public record of the state, unless she
restricted the generality of her grant by plain and unequivocal
terms in the subsequent description.   But what follows only con-
firms the general intent, for it calls for the adjoining donation
surveys by their numbers as the abuttals of the lot she conveys—
thus, No. 2058 on the west, 2068 on the north, 2100 on the east
and 2066 on the south.   In coming to the eastern boundary,
where it is supposed the restriction is introduced, we find it
described as " thence (that is from the post in the centre of the
public road) by tract No. 2100, and along the centre of said
road south 9 degrees 15 minutes east, 141 perches to a beech."
Thus we have a description by two circumstances, one of which
must be mistaken, if the road and the boundary of 2100 are not
identical.   That the grantor, misled by the survey of the artist,
who thought the road was the common boundary, supposed they
were identical, there is no doubt; but this does not detract from
her clear intent to convey the whole lot, and the abuttal by lot
No. 2100 will carry the conveyance to its boundary.   The mis-
taken supposition of its identity with the public road does not
vary the intent, and, therefore, whether we are governed by the
entire description, or by the rule that in cases of ambiguity the
deed is to be taken most strongly against the grantor, the effect
is to extend the conveyance to the boundary of No. 2100.

The court left it to the jury to find the actual location of this
boundary, and this is complained of in the fifth assignment of
error.   But this was right.   The beech, the south-east corner of
No. 2067, is an admitted corner, while the testimony of Wilson
King and Judge Miles tends strongly to show that the north-east
corner was at the linn or basswood stump claimed to by the plain-
tiff.   In the absence of marks to denote the line between these
corners a straight line would be run between them.   As corners
they denote the course of the line, and justified the court in sub-
mitting its location there, notwithstanding it would fall to the
east of the public road.   The manner of making these donation
surveys by running the north and south lines in ranges, marking
corners upon them at the distances apart necessary to give the
quantities of the lots, and not running the east and west lines,
lessens the probability of the true linn or basswood lying so much
out of the course of the north and south range line ; but if the
jury were satisfied that it stood where the testimony of King and
Miles tended to locate it, the instruction of the court was right.

We discover no error in the four specifications of the fourth assign-
ment.   The judge gave no binding instruction upon the testimony
thus stated, and we discover no substantial variance between his

[Greeley v. Thomas.]

statements and the evidence. Upon the whole, he left the location fairly to the jury. After stating the location according to King's testimony, he puts the interrogation to the jury : " Is this location correct ?" What follows is but a narration of matters tending to sustain it. It is not error in a judge to point out the connection and effect of the facts, unless it is so done as to mislead or to be binding upon the jury.

We discover no error in the legal effect given to the disclaimer of Bemis. It was a written confession of record to avoid further costs in the prosecution of the suit against him. As to that part of the land which he disclaimed, it.operated as an estoppel by record in this suit, unless withdrawn or amended by leave of the court. If Bemis failed to describe correctly the land for which he took defence, he ought to have asked the court for permission to amend his description ; failing in that he cannot complain unless the court erred in interpreting the description, and this is now the only question. Bemis took defence for " all that certain piece or parcel of land situate in Wayne township, bounded and described as follows ;" then coming to that part which concerns this controversy, he proceeds: " On the south by donation lot No. 2101, and on the west by donation lot No. 2067, and containing 56 acres more or less, and is part of donation tract No. 2100." And he further says: " And any and all other land included in the plaintiff's 'writ, he the said Bemis disclaims having any title or interest, in or to, or the *possession* of the same, or any part thereof, and takes defence for the land included in the above description, and claims no other." Nothing can be clearer than this. He does not found his claim by the public road, or by his possession, or by any circumstances, to extend it over any part of No. 2067 ; but expressly confines himself within lot No. 2100, and to the boundary of No. 2067, disclaiming possession as well as title to all beyond this boundary.

The court did not take the fact of location from the jury, but merely held that Bemis after his disclaimer could not pass across the boundary of 2067, leaving it fairly to the jury to say where that line was.

The verdict is not void for uncertainty, but it is not to be used as the plaintiff in error would have us to do, by isolating the finding against Greeley, and disconnecting that portion from the draft referred to by the jury as forming a part of their verdict.

The reference to the draft of David Wilson applies as well to the finding against Greeley as to that against Bemis, and gives certainty to the description.

Judgment affirmed.